Hitchcock, J.
The plaintiffs in this case having shown the act •of incorporation, the acceptance of that act, the opening of books of subscription, the subscription by the defendant, and the calls made for installments on the stock so subscribed, make out a prima facie case, and right of recovery, unless the points of defense raised by the defendant are such as to defeat that right.
The first objection made by the defendant to the right of action ,is, that the subscription is a nude pact, as no engagement was or *114, 115 could be made on the part of the company so as to create mutual engagements. This exception is founded in part, if not principally, upon the hypothesis that there was no corporation in existence at the time the subscription was made. But this is a mistake. By the second section of the %ct of incorporation, [114 the company, that is, the individuals named in the act, or “so many of them as choose to do so, by written articles of association,” are authorized to organize themselves, and open books of subscription. 30 Ohio L. 239. Such organization was had before the books were opened, whereby the act of incorporation was recognized and the company became a body corporate. Tinder these circumstances there was sufficient mutuality in the contract, and the subscription obligatory on the defendant. Goshen v. Turnpike Co. v. Hurtin, 9 Johns. 217; Dutchess Cotton Man. Co. v. Davis, 14 Johns. 238.
But even should it be considered that the act of incorporation did not take effect until the company was organized by an election of officers by the stockholders, still we should hold that the subscription would be binding. A sufficient consideration would be found in the anticipation of profits in tolls to be received from those using the road.
The next objection is, that the contract was not with the plaintiffs, but with a “president and directors ” thereafter to be chosen or appointed. There can be no doubt as to the intent of this contract. The object of the subscription was to aid “ The Milford and Chillieothe Turnpike Company ” in the construction of a road. The object being well understood, the subscription can not be avoided on account of a mistake made in the corporate name, and the contract will operate in favor of those for whose benefit it was intended. Commissioners of the Canal Fund v. Perry, 5 Ohio, 56. By this subscription, informal though it might have been, the defendant became a stockholder in the company, entitled to all the privileges and immunities of any other, and like any other stockholder is bound to pay according to the legal effect of his subscription.
Another objection made by the defendant is, that the suit, if sustained at all, must be in the name of the “president and directors of the Milford and Chillieothe Turnpike Company.” If we are correct in supposing that this contract is, in law, a *con- [115 tract with the “ Milford and Chillieothe Turnpike Company,” then *116 the suit is properly brought in the name of that company. Comm’rs Canal Fund v. Perry, 5 Ohio, 56.
It is next claimed that the defendant was released from the obligation of his subscription by the change made, by the amendatory act, in the route and in the grade of the road.
That there might be such change made in the route of a turnpike road as to exonerate those who had previously subscribed for its construction will not be denied, but that every trifling change, so long as the termini remain the same, will have this effect, can not be admitted. By the original act of incorporation, the line of the road is to be “on the nearest and best route ” between Milford, in the county of Clermont, and Chillicothe, in the county of Boss. By the amendatory act, the termini of the road remain the same, but Bainbridge and Hillsborough are made points in the route. Now, whether here is in fact any change in the route does not appear. From anything before the court these two places may be actually on the line of the “ nearest and best route.” As a matter of fact we know that they are, if not exactly, very nearly on a line from Milford to Chillicothe. It still remains to be shown that there has been any material change in the route of the road, and until it is shown this court will not presume it. So far as respects the angle of the road with the horizon, it will be found that there is nothing in the amendatory act absolutely compulsory. If the nature of the ground be such that it be practicable to reduce this angle to two degrees, it must be done; if not, the road may be constructed at a greater angle, not however, in any event, to exceed four and one-half degrees.
It is again claimed, that the defendant is discharged from- his subscription in consequence of the failure of the corporation to commence work upon the route within three years next after the act of incorporation was passed.
Section 18 of the act is as follows : “ If said company shall not, within three years from the passage of this act, proceed to carry on 116] said work, or shall not, within ten years thereafter, ^complete thirty miles of said road, according to the true intent and meaning of this act, then, and in either of those cases, all the rights, liberties, and privileges granted by this act shall cease." , It is contended by the defendant that the true intent and meaning of the words,' “ carry on said work,” is, that the corporation shall actually commence operations upon the road by manual labor, while a differ *117 ent construction is insisted upon by the plaintiff. We apprehend) however, that it is not necessary, for the purposes of this ease, definitively to determine what is the true construction of the phrase. Assuming for present purposes that the defendant is correct as to the construction, how stands th*e case ?
The first step to be taken was to organize the company that it might take the benefit of the act. Being so organized it became a body corporate and politic, a corporation possessed of all the powers, rights, liberties, and privileges granted by the act by which it was created. So long as it complied with the requisitions of its organic law, it would not be divested of any of these powers, rights, liberties, or privileges. In consideration of these powers, rights, and privileges granted, it had certain duties to perform. One of these was to commence work upon the road within three years. This was not done, and what is the consequence? Did the corporation cease to exist? We apprehend not. The corporation must have been in existence before it could have commenced the work, and having failed to commence it, still continued to exist. But the failure was good ground of forfeiture, and upon a proper proceeding before this court, such forfeiture would have been adjudged. But the supreme power of the state might waive the forfeiture, and the case shows that it was waived. The legislature, at the instance of the corporation, and it must be remembered that the defendant was a member of this corporation, gave further time within which to commence the work. By this law the corporation was not divested of any right, but had in fact an additional right conferred upon it. It is placed precisely in the situation it would have been had the time originally prescribed) within which to commence the work, been fixed at 4six [117 years; and of course the obligation of the defendant remains unchanged.
Judgment for the plaintiff.