[Sac. No. 926.   Department Two.—March 31, 1903.]

THE SATHER BANKING COMPANY, Appellant, v. THE ARTHUR R. BRIGGS COMPANY et al., Respondents.

APPEAL—REVIEW—INSUFFICIENT BILL OF EXCEPTIONS.—A bill of exceptions which contains no specifications of insufficiency of the evidence to justify the findings, and shows no errors of law, cannot be considered upon appeal from an order denying a new trial, nor on an appeal from the judgment which is taken more than sixty days after its entry; and the review upon such appeal must be confined to the question whether the judgment of the lower court is sustained by its findings.

DEED TO BANK—GENERAL SECURITY FOR FUTURE DEBTS—GUARANTY— RENEWAL OF INDORSED NOTES—RELEASE OF INDORSERS—FORECLOSURE.—A deed given to a banking company by a stockholder of a corporation as general security for all amounts which should thereafter become due to it from the corporation, and another company named, does not create a guaranty, or personal liability, and does not depend upon any particular evidence of indebtedness, but creates a general continuing liability of the land as security for all amounts thereafter to become due to the bank from the parties named in what-

ever form. The liability of the land as such security is not affected
by the renewal of indorsed notes given at the time of the conveyance,
upon which renewal the original indorsers were relieved from lia-
bility; and the general security may be foreclosed for the balance
due upon the renewed notes.

ID.—SEPARATE AND INDEPENDENT INSTRUMENTS.—The conveyance and the
indorsed notes were separate and independent instruments, having
no relation to each other, and governed by distinct rules of law.

ID.—SURETYSHIP—CONSTRUCTION OF CONTRACT.—The general rule that a
surety cannot be held beyond the express terms of his contract, ap-
plies only to the extent that no implication shall be indulged in to
impose a burden not clearly inferable from the language of the
contract, but does not apply so as to hold that the contract shall
not be reasonably interpreted, as other contracts are.

ID.—PURPOSE OF CONTINUING SECURITY—PRACTICAL CONSTRUCTION.—
Where the evident purpose of the conveyance in question, con-
strued with other securities taken from other stockholders to the
same effect, was to establish a credit at the bank for the companies
named, under such terms of continuing liability as would extend
such credit and fully protect the bank, and the language used was
broad enough to express such purpose, and the action of the bank
and of the grantor of the conveyance shows that the practical con-
struction placed upon it was that it was a continuing liability to
secure all amounts to become due, ·and all indebtedness contracted by
the companies, in whatever form, it must be so held.

ID.—EFFECT OF RENEWAL OF NOTES—LIEN OF MORTGAGE—APPLICABILITY
OF RULE.—The general rule that the renewal of notes does not
amount to payment, that a mortgage secures the debt, and not any
particular evidence of it, and that its lien is not affected by a change
of the note, or giving a different instrument as an evidence of the
debt, or by any extension of time, and can only be discharged by
payment or an express release,—is not limited to a case where the
mortgage secures the mortgagor's own debt, but applies equally
where the mortgage is to secure the debt of a third party, and its
language imports that it is given to protect all amounts due, without
limitation as to form, and provides only for a release of the security
on payment.

APPEAL from a judgment of the Superior Court of Placer
County and from an order denying a new trial. J. E.
Prewett, Judge.

The facts are stated in the opinion of the court.

Denson & Schlesinger, for Appellant.

The contract in question is to be construed as one of con-
tinuing liability according to its terms. (*Gates* v. *McKee,*

13 N. Y. 232;[1] *Rindge* v. *Judson,* 24 N. Y. 64; *Davis* v. *Wells,* 104 U. S. 157; *Lee* v. *Dick,* 10 Pet. 482; *Bell* v. *Bruen,* 1 How. 169; *National etc. Bank* v. *Gay,* 57 Conn. 224.)   The practical construction put on it by the parties is to be considered. (*Michigan State Bank* v. *Peck,* 28 Vt. 200.[2])   The security of the mortgage continued as long as the indebtedness was kept alive.   (*London etc. Bank* v. *Bandmann,* 120 Cal. 220;[3] *London etc. Bank* v. *Parrott,* 125 Cal. 472;[4] *Flower* v. *Ellwood,* 66 Ill. 438, 446.)

Frank H. Gould, and James L. Robison, for Respondent Butler.

A surety cannot be held beyond the terms of his contract. (Civ. Code, sec. 2836.)   The mortgage was completely extinguished by the operation of the statute.   (Civ. Code, sec. 911; *Wells* v. *Harter,* 56 Cal. 342; *Newhall* v. *Sherman, Clay & Co.,* 124 Cal. 509, 512.)   The liability of the surety was discharged by the release of indorsers on the secured notes without Butler's consent.   (*Parke* v. *White River Lumber Co.,* 110 Cal. 658; *Tuohy* v. *Woods,* 122 Cal. 665.)

LORIGAN, J.—The plaintiff appeals from a judgment in favor of defendant F. M. Butler, and from an order denying its motion for a new trial.   Our attention has been invited by appellant to a consideration of its bill of exceptions both on the appeal from the judgment and from the order, but we cannot consider it for either purpose.   The appeal was taken more than sixty days after the entry of the judgment, hence it cannot be used on appeal from the judgment.   (Code Civ. Proc., sec. 939.)   Neither can it be considered on the appeal from the order, because it contains no specifications of insufficiency of evidence to justify the findings, no assignments of error in any particular, and none appear on the face of the bill.   (*Leonard* v. *Shaw,* 114 Cal. 69; *Sprigg* v. *Barber,* 122 Cal. 573.)

We are thus limited to the sole question, whether the judgment of the lower court is sustained by the findings.   The facts found are, that on December 11, 1889, the defendant,

---

[1] 64 Am. Dec. 545.

[2] 65 Am. Dec. 234.

[3] 65 Am. St. Rep. 179.

[4] 73 Am. St. Rep. 64.

the Arthur R. Briggs Company, was a corporation, having among its directors and stockholders the other defendants, Arthur R. Briggs, F. M. Butler, and C. E. Knapp. On that day the defendant Butler delivered to the plaintiff bank an instrument in writing duly executed in its favor in the form of a deed, containing this recital as indicative of the purpose of the conveyance: "This conveyance is made for the purpose of securing to the Sather Banking Company of San Francisco, all amounts which shall hereafter become due from Briggs, Ferguson & Co. and the Arthur R. Briggs Company, and on the payment of all of said amounts, the second party shall reconvey said premises, free and clear of any encumbrance imposed thereon by said second party herein, to said first party." At the same time, and as part of the same transaction, the defendant Briggs delivered to the plaintiff a deed duly executed in its favor, conveying certain lands in San Luis Obispo and Shasta counties, and at the same time transferred to plaintiff, as a pledge, certain shares of capital stock in two land companies. The defendant Knapp also delivered to plaintiff, as a pledge, certain contracts for the purchase of land. The deed of Briggs contained a provision similar to that in the Butler deed, and the pledges were given upon the same express terms.

Upon the delivery of these deeds and pledges the plaintiff advanced to the Briggs Company five thousand dollars, taking as evidence of the debt the promissory note of the company, payable May 12, 1890, indorsed by the defendants Briggs, Butler, and Knapp, and by one W. W. Boughton. On January 4, 1890, plaintiff loaned the company an additional five thousand dollars, taking the note of the company, indorsed by the same persons. These were the only amounts advanced. When these notes became due they were renewed by other notes executed by the Briggs Company to plaintiff, but without indorsement by any person. These were also repeatedly renewed by the company, the last renewal being made on February 25, 1895, and is the note sued on herein. The payment of this last note was guaranteed in writing by the defendants Briggs and Knapp. Out of the securities deposited by Briggs certain moneys were realized by plaintiff and were applied to the original debt, reducing it to $8,346.74, and for

this balance the note sued on was given. Butler ceased to be a director or stockholder of the Briggs Company before June 30, 1891, and the various renewals of the original notes were made without his knowledge or consent.

The plaintiff sued to recover a personal judgment on the note against all the defendants except Butler, and as to him sought in the same action, by foreclosure, to subject the land described in his deed to the payment of this debt.

The other defendants made default and plaintiff recovered judgment against them.

The defendant Butler, however, contested the action, and under appropriate pleadings in that behalf, and upon the recited findings the lower court held that by granting extensions of time to the Briggs Company upon the two notes executed by the company and indorsed by Butler, Briggs, Knapp, and Boughton and accepting renewals of this note from the Briggs Company, without the original or any indorsements, thus relieving the indorsers from liability, the right of plaintiff to enforce its claim against Butler's land as security was lost, and the land relieved and exonerated from liability.

The accuracy of this conclusion from the findings plaintiff challenges on this appeal, and this is the only question to be considered.

Whether this conclusion is correct or not must be determined by considering what the legal nature of the original instrument delivered by Butler to the plaintiff bank was, and how, if at all, it was affected by the execution of the indorsed notes, the extensions of time and renewals without reindorsement. In other words, whether the conveyance by Butler and the indorsed notes were joint, mutual, and dependent securities affecting each other, or separate and independent instruments having no relation to each other, and governed by distinct rules of law.

This question whether a particular instrument or given contract is in the nature of a surety is not to be solved by considering and applying to the instrument, or contract, all the many rules of law which apply to suretyship generically, but by considering those principles of law which apply to the specific relation in question, whether it be that of mort-

gagor, surety, guarantor, indorser, or any other of the various relations which may exist under the general term "suretyship."

In this general relationship there are important distinctions to be observed, lest a principle exclusively applicable to one be perverted and applied to another.

At this point, and before discussing the main question, we wish to dispose of appellant's claim, extensively argued, that the effect of the Butler conveyance was to create a continuing guaranty. (Civ. Code, sec. 2814.)

The matter of guaranty, continuing or otherwise, has no place in the case. A guaranty imports a personal liability exclusively. Butler under his conveyance assumed no personal liability, but simply conveyed his land as security.

Epitomizing that section of the code defining such relationship, a surety is one who, on request of another, to secure him a benefit, becomes responsible for some act of his, in favor of another, or hypothecates property as security for another. Under this general provision many relations of suretyship may be created, and by the last clause the special relation of mortgagor or pledgor may be assumed, and it was the relation of mortgagor which, under his conveyance, Butler assumed, and his responsibility, and the plaintiff's rights as mortgagee, are to be determined by a consideration of that relationship, and the construction of the terms of the instrument as they appear on its face with the circumstances accompanying its delivery. What these terms are, appear in the defeasance clause, and is in the same language that is used in Briggs' mortgage and the accompanying pledges, namely that each is for the purpose of "securing to the Sather Banking Company of San Francisco, all amounts which shall hereafter become due from Briggs, Ferguson & Co., and the Arthur R. Briggs Company, and on the payment of all of said amounts" the property shall be reconveyed or redelivered.

Now, what was the liability, and what was the extent of it, that Butler charged his land with, by the execution and delivery of this mortgage to plaintiff? He insists that it did not exceed the responsibility for the payment, when due, of the debts as evidenced by the two notes.

We hardly think that a careful examination of the language of this instrument, considered even by itself, supports any such claim. Neither is it warranted from the circumstances and conduct of all the parties, or the object they had in contemplation when it was delivered, considered in connection with the language employed. Examining the instrument of itself, there is nothing said in it about notes, or any special form of indebtedness. It was delivered as security for "all amounts to become hereafter due." It provides for the payment of an indebtedness, not the form in which it is evidenced. If he intended to have the security stand for all amounts which the company should contract, without limitation as to number, amount, or form, he could hardly have made the language more general to effect that purpose. If he had desired to limit it in any, or all, of these particulars, he certainly could have made it more specific.

And if, to any extent, he has left the terms ambiguous, then it must be construed most strongly against him.

While it is true that a surety cannot be held beyond the express terms of his contract, yet in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts. Such construction does not mean that words are to be distorted out of their natural meaning, or that, by implication, something can be read into the contract that it will not reasonably bear; but it means that the contract shall be fairly construed with a view to effect the object for which it was given, and to accomplish the purpose for which it was designed. The old rule of *strictissimi juris* applies only to the extent, that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that the contract shall not be reasonably interpreted as other contracts are. (Civ. Code, sec. 2837, and note; *London etc. Bank* v. *Parrott,* 125 Cal. 481.[1]) Taking these authorities as declaring the rule of interpretation, it appears from the language used in the several conveyances and pledges made by Butler, Briggs, and Knapp, who were all directors of the Briggs Company, that it was the purpose of their execution and delivery to establish a credit at the bank for the com-

[1] 73 Am. St. Rep. 64.

pany; to secure such funds from time to time as the necessities of the company might require, and, upon such short loans as banks usually extend, and that to obviate the necessity of securing by mortgage or collaterals each loan as it was made, the securities would in the beginning be furnished, under such terms of general continuing liability as would extend the credit of the company, and fully protect the bank.

The language was certainly broad enough to accomplish this purpose, and the action of both the bank and Butler upon it, shows that the practical construction they placed on it was that it was a continuing liability. The bank so practically construed it by advancing its money upon it, and keeping the indebtedness alive by renewals of the original evidence of indebtedness. Butler placed the same practical construction on it by permitting his property to stand charged with the lien long after the original notes he had joined in executing were due, and until long after the statute of limitations would have barred any recovery upon them, and he failed to assume, by any act or word, during all this time, any position from which it might be inferred that the instrument was other than a continuing liability, until this suit to foreclose was instituted, when for the first time he insisted that the language of his contract should be given a limited construction, and his liability measured by the terms and conditions of the two notes, and the conduct of the company and plaintiff concerning them.

It appears to us, however, that the execution of these notes is given a prominence in the case which is unwarranted and unimportant. Their execution is attempted to be grafted upon Butler's mortgage as a fortuitous circumstance, and their execution claimed by him to be provided for as part and portion of his contract—as if they were specified in the instrument, as a method by which his liability under his contract should be evidenced, and as a limitation on that liability. They have, however, nothing to do with the matter. He did not, as he might have done, limit the liability of his land as security for indebtedness falling due upon promissory notes or any other evidence of indebtedness, or for any given amount, or payable at any time. He made his property responsible as security to the bank ''for all amounts which shall

hereafter become due'' from the company, and "on the payment of all said amounts'' his property should be reconveyed to him. There was no stipulation that these amounts should be evidenced by notes, or in any other manner. It was the indebtedness he was securing, not the evidence of it. If the creditor bank saw fit in dealing with the principal debtor—the company—to have its loan evidenced by the company's note, that was no concern of Butler. It was a matter of convenience between the creditor and debtor. The property mortgaged became charged with the lien for the repayment of the money as soon as it was delivered and the loan advanced, and this followed under his mortgage, whether the bank took, or did not take, notes. It might have advanced the money without notes, and Butler's mortgage would have secured them. It was the substantative matter of "amounts due" and their payment which it secured, not the formality of their evidence.

It is contended, however, by respondent that even if this is true, yet, as he secured only all amounts which thereafter became due from the company, and as the only amounts loaned to the company were the two sums evidenced by the notes, that his liability attached at least when these notes became due, and that the several renewals of the original notes taken from the company operated as extensions of time, and under the law discharged his property as security. But, as said before, the mortgage was not given to secure amounts due evidenced by promissory notes. It was a general, continuing liability, applicable to all amounts due, without respect to the manner they were evidenced, unlimited as to original or successive transactions between the creditor and debtor, unrestricted as to number, amount or time, but securing them all and providing that "on payment" the lien of his security should cease. Besides, an amount due in the primary sense means simply owing. (*Crocker-Woolworth Nat. Bank* v. *Carle,* 133 Cal. 409.) And in its usual acceptance it means not only that a particular time for payment has expired, but that the debt remains unpaid. If the note had provided for the payment of a certain described promissory note, a different question might be presented. But, as it provided for indebtedness generally and the payment of it before the security should be exonerated, then so long as the

indebtedness existed, in whatever form, the security was applicable for its protection. This mortgage, as it provided generally for all amounts due and their payment, applied as well to the renewals of the notes as to the creation of the original indebtedness, and they were just as truly and effectually amounts due under the renewal notes as under the original notes. And under the general, liberal, and comprehensive language in Butler's mortgage, if it were necessary, we might well hold, as it placed no limitation on even the form of indebtedness secured, but on the contrary provided for the payment of all amounts due, that as far as formal evidence of indebtedness was concerned, it applied to renewals of notes as well as to their original execution. It was the same indebtedness, and the renewal of it was simply a prolongation of the original contract for its payment. The general rule is that the renewal of notes does not amount to payment. (*Savings Bank* v. *Central Market Co.*, 122 Cal. 35.) The presumption is that they were not so taken. The language used by Butler in the mortgage was meant to be comprehensive. Its evident purpose was to provide a full and complete security for all indebtedness contracted by the company under any form, and the intent so evidenced must for all equitable purposes prevail, where not necessarily controlled or limited by definite terms pointing to a different intent and purpose. And as bearing, in a general way, on this point, we think the discussion in *London etc. Bank* v. *Bandmann*, 120 Cal. 222-223,[1] may be considered; also *Shipman* v. *Lord*, 58 N. J. Eq. 385; *Flower* v. *Ellwood*, 66 Ill. 446. The general rule is that "no change in the form of indebtedness or in the mode or time will discharge the mortgage. A mortgage secures the debt and not the note or bond or other evidence of it. No change in the form of the evidence or the mode or time or times—nothing short of *actual payment of the debt*, or an express release—will operate to discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note or giving a different instrument as an evidence of the debt, or by a judgment at law on the note merging the original evidence of indebtedness." (Jones on Mortgages, 924; *Lippold* v. *Held*, 58 Mo. 213; *Wiener* v.

[1] 65 Am. St. Rep. 179.

*Peacock,* 31 Mo. App. 244; *Pinney* v. *Kimpton,* 46 Vt. 83; *Sichel* v. *Carrillo,* 42 Cal. 503; *Dellapiazza* v. *Foley,* 112 Cal. 380; *London etc. Bank* v. *Bandmann,* 120 Cal. 220.[1]) This rule is more usually applied in cases where the mortgage is to secure the mortgagor's own debt, but it should be equally applicable in cases where the mortgage is to secure the debt of a third party, and release from liability through extensions of time is sought, in the face of language which can reasonably be construed to mean that the security was advanced to protect all amounts due, without limitation as to form, and providing only for a release of the security on their payment.

We come now to consider whether the failure of the plaintiff to proceed on the indorsed notes given by Butler, Briggs, Knapp, and Boughton operated to discharge Butler's mortgage. Butler was equally an indorser with the others, but he does not, of course, contend that the plaintiff's failure to proceed against him, operated as a general discharge. His claim is based upon the failure to proceed against the others, and he claims relief from his mortgage on that account. We do not think, however, that there is any merit in this claim. The mortgage of Butler was the general and primary security. The indorsement of the notes but limited and secondary. Such indorsements were neither substitutionary, accessorial, or collateral to the primary obligation, but entirely independent of it. The mortgage applies as a broader, more unlimited, unrestricted, certain, and safer security; the indorsement as a narrower, limited, uncertain, and insecure protection. The mortgage charged the land alone, and absolutely, without reference to any future indorsements, additional security, or personal liability, and the mortgagor assumed no personal responsibility. The land, in the nature of things, afforded a substantial, enduring security, coextensive with the existence of the debt; the indorsements a temporary, restricted, uncertain security, measured entirely by the financial ability of the indorsers to pay at maturity, and which indorsements might, through the vicissitudes of fortune when the time for ultimate payment arrived, be valueless. The rights and liabilities of the mortgagor and indorser respectively are different. The mortgagor makes his own contract on such terms as he sees fit, and is bound only by such as he makes.

---

[1] 65 Am. St. Rep. 179.

The law, by his act of indorsement, fixes the responsibility of the indorser for him. Their liabilities are also different. The mortgagor here is only liable for the debt he secures to the extent of the value of the security. There is no personal liability on his part. The indorser is liable for the full amount of the debt. Actions against them must be maintained in different forums, the one in equity, the other in law.

We cannot perceive anything in common to the mortgage and the contract of indorsement except that they fall within the general scope of "suretyship," nor anything in common between these specific kinds of security which would make the failure of the plaintiff to pursue a remedy against the indorsers relieve the mortgage security. On the other hand, there is every reason why, from their separate and distinctive difference, it should not follow.

Our attention has not been called in the briefs of counsel to any case in which the principles involved here have been heretofore passed on. Two cases, however, which we have found, may be referred to, which deal to some extent with the subject. In one of the cases it appears that a Clarissa Clark purchased land from a man named Mitchell, and in part payment indorsed to him a promissory note payable to her by one Darling, and as security to pay said note at maturity gave him a mortgage on her land. She subsequently sold the property to one Hodgden. Mitchell sued in foreclosure, and Mrs. Clark and Hodgden set up failure to present the note for payment to Mrs. Clark as indorser, as a defense against the mortgage, claiming that this failure released the security. The court said in passing on this point: "The note has not been paid to him by the maker or anybody else. But it is claimed that his course in reference to it has been such as to disentitle him to enforce the mortgage against Mrs. Clark. It is claimed in the language of the defendants' counsel that he has made the note his own; and this, solely for the reason, that he failed to take requisite steps to charge Mrs. Clark as *indorser,* according to the rules of the law merchant.

"We are unable to assent to the position assumed by the counsel for the defendants, that the orator's right to enforce his security is only coextensive with, and limited by, his right to maintain a suit at law, as indorsee, against Mrs. Clark, as indorser of the note in question.

"The condition of the mortgage, neither expressly nor by implication, contains any such limitation; but on the contrary, in the most explicit and comprehensive terms, it provides that she shall pay, or cause the note to be paid.

"We are clear that there is no principle, or case, which would allow her to stand upon the mere technicality of an arbitrary rule of commercial law, and, independently of any question, whether she had been put to any prejudice, in fact, by the course taken by the orator in reference to the note, stand upon the same ground, in reference to the security, as if, on the one hand, the note had been paid, or, on the other, that the orator had, through fault on his own part put her in a position of loss or detriment, in reference to her rights as against the maker of the note. . . .

"Nor is it true, in other cases, that the right to enforce a mortgage security is limited to the right to sustain an action at law for the indebtedness. A familiar instance is that of the enforcement of the mortgage security, after the debt is barred, at law, by the statute of limitations.

"The true view of the subject seems to be, that, either the debt itself must become discharged, so that it no longer exists as an indebtedness, or the mortgagor must become discharged from the pledge created by the mortgage.

"In this case the mortgage is not given merely to secure the fulfillment of Mrs. Clark's liability as indorser, but to secure the fulfillment of Darling's liability as maker of the note. . . .

"The mere fact of non-presentment and failure to give notice, in compliance with the rules of the law merchant, does not work such a discharge of the pledge." (*Mitchell* v. *Clark,* 35 Vt. 104.)

And in the case of *Hilton* v. *Catherwood,* 10 Ohio St. 111, the court says, "It does not appear that the proper steps were taken, by demand and notice, at the maturity of the note, to charge Catherwood, as indorser. And Sunderland, the maker, being now insolvent, the question arises, whether, without such demand and notice, the plaintiff still retains his mortgage lien, as a security for the payment of this note.

"It may be true, that no action could have been maintained upon the unpaid note in question, against the indorser; his liability, under the contracts of indorsement, not having been fixed by demand and notice. But the question here, is not as

to the personal liability of the indorser, but as to the existing and continued lien of the mortgage, which may be independent of all personal liability. It is clear that A may execute a valid mortgage to B to secure a debt owing solely by C. Whether the mortgaged premises are still bound for the payment of this note, must depend upon the terms and conditions of the mortgage itself.

"Looking to the mortgage, we find that several promissory notes are described in it, some of which the recitals show to have been assigned by the mortgagor to the mortgagee, and among these is this same two-hundred-dollar note of Richard Sunderland, which still remains unpaid, though long since due. The condition of defeasance is not that the mortgagor shall discharge all the obligations of his contract of indorsement, but that 'the said James Catherwood shall pay or cause to be paid, said several notes to said Morris Hilton, or his order, when the same become due, with the interest that may accrue on the same.' "

Under the construction placed by us on this mortgage it is not material or important to further consider this matter of indorsement. The mortgage secured an indebtedness. It was not security for any evidence of indebtedness. These notes, with or without indorsements, were not expressly or impliedly within its terms. They did not affect the primary and superior security—the mortgage—under which the right to create an indebtedness at all, was originally conferred, and for the payment of which the mortgage security was directly, and primarily made responsible. This debt is still due to the plaintiff from the principal debtor—the company—and being so, the payment is secured as an "amount due" under the general terms of the mortgage, notwithstanding the indorsers on the notes may have been relieved of responsibility under them.

We have examined the cases cited by respondent (*Park* v. *White River Lumber Co.*, 110 Cal. 658, and *Tuohy* v. *Woods*, 122 Cal. 665), but do not perceive that they have any application to the case under consideration.

For the reasons given the judgment is reversed and a new trial ordered.

McFarland, J., and Henshaw, J., concurred.