[No. 6604.]

## HURLBURT ET AL. v. KEPHART.

1. **Principal and Surety—Construction of Contract**—The rule that the contract of suretyship is strictissimi juris is not a rule of construction, but a rule which governs the application of the contract, after its meaning has been ascertained. In ascertaining its meaning, the contract of a surety is subject to the same tests as is every other contract. It is to receive a construction which will give force to the obligation of each of the parties at the moment the contract takes effect.—(359, 360)

Kephart was inducted into the office of state treasurer on the 12th of January. There was then in the Bank of Montrose $15,000 of the moneys of the state, deposited by the previous treasurer. The bank solicited a continuance of the deposit, agreeing to secure the same by a satisfactory bond, and Kephart accepted from his predecessor the certificates of deposit issued to that officer for the amount, and received new certificates therefor, in his own name as treasurer, under date of January 12th. On the 18th, the bank, with the defendants as sureties, executed a bond to Kephart, which, after reciting the custom of those occupying the office of treasurer to deposit public moneys in the banks of the state, that Kephart, "has determined to and will deposit certain moneys of the state * * * with the Bank of Montrose," the agreement of the bank to pay interest "quarterly on the daily average of such amount as the bank shall have on deposit" to the credit of Kephart, was conditioned that the bank should, "well and truly keep all sums of money, so deposited or to be deposited, as aforesaid," and pay the same over upon demand. There was no recitation anywhere in the bond of any previous existing deposit in the bank, and no subsequent deposit was ever made. It appeared that in fact no subsequent deposit was intended then to be made by the treasurer, so that if the surety was not liable for the deposit of January 12th, the bond would entirely fail of effect, and be, at the time it was executed, a useless ceremony. Held, it must be construed as applying to that deposit, and that the sureties were liable therefor. Held, further, that as the deposit by Kephart, of the certificates received from his predecessor, the issuing, and acceptance in lieu thereof, of new certificates in his own name, and the execution of the bond for his security, were all parts of one transaction, there was, in legal effect, a deposit of money simultaneously with the execution of the bond, as contemplated by its terms.— (356-364)

23

2. ――Consideration—Held, further, that inasmuch as there
was no provision of the bond as to when future deposits should
be made, and the agreement of the treasurer with the bank was
that if any part of the existing deposit should be withdrawn,
the treasurer would restore the amount as soon as the condition
of the public funds permitted, and as far as possible keep in the
bank the sum of $15,000, and as in fact no part of the $15,000
was ever withdrawn, and no further deposit ever requested, up
to the time of the bank's failure, there was no failure of con-
sideration, even though the promise to make future deposits
should be regarded as the sole consideration for the execution
of the bond.—(361)

3. Evidence—Parol to Explain Writing—A bond executed by
a bank, with sureties, to the state treasurer, recited that the
treasurer "has determined to and will deposit" certain moneys
of the state with the bank; but nothing was said as to the
amount or time of such future deposits. Held, that parol evi-
dence was competent to show what was in fact agreed between
the treasurer and the bank, prior to the execution of the bond.
—(362, 363)

*Appeal from Montrose District Court*—Hon.
SPRIGG SHACKLEFORD, Judge.

Messrs. STORY & STORY for appellants.

Mr. CHARLES J. HUGHES, Jr., Messrs. BELL, CAT-
LIN & BLAKE, and Mr. P. W. MOTHERSILL for ap-
pellee.

Mr. JUSTICE HILL delivered the opinion of the
court:

This action was brought by the appellee, a for-
mer state treasurer, to recover judgment against the
appellants and others as sureties on a bond alleged
to have been given to secure deposits of state funds
made by Kephart as state treasurer, in the Bank of
Montrose. A demurrer was sustained to the original
complaint; the appellee declined to amend; judg-
ment was entered against him, which was reversed
by our court of appeals, *Kephart v. Buddecke*, 20
Col. App. 546. That court held that the sureties on

the bond were liable for the safe keeping and payment of the money deposited prior to the execution of the bond, as well as afterwards, and that the promise in the bond of the treasurer to make future deposits in the bank was a sufficient consideration to the bank and its sureties to make them liable for all money already on deposit with the bank, and to be deposited in the future. After the reversal of the judgment the appellants filed an answer in which, first, they denied certain allegations of the complaint; and for a further defense they plead a failure of consideration. To this defense a replication was filed denying its allegations. The replication also set forth facts attempting to establish several considerations for the execution of the bond. A demurrer to the replication to the further defense was overruled. Trial was to the court, which resulted in separate judgments against each of the appellants for their proportionate share of the amount of the loss, caused by the failure of the bank, based upon the number of signers to the bond. From this judgment this appeal was prosecuted by some of the defendants.

At the trial it was shown that one signor of the bond had gone through bankruptcy proceedings; while others had made satisfactory arrangements for their proportionate shares of the loss. The court rendered separate judgments against the defendants contesting this claim, limiting them to the proportionate amounts that would have been owing by each, had all paid their respective shares, and we do not understand that any serious contention is made concerning the form or amount of the judgment.

Eliminating the outside picket line contentions, the material facts as disclosed by the record are: that Mr. Kephart was the state treasurer during the years 1897 and 1898; that when he was inducted into office (January 12th, 1897) Mr. Mulnix, his predecessor, tendered to him, as part of the state funds,

certificates of deposit in this bank to the amount of
$15,000; that a Mr. McClure, who was solicitous of
having this money retained upon deposit in this
bank, was in Denver for that purpose; that he,
McClure, had absolute control of the bank's policy
and conduct, it being (as testified by its cashier) a
one man's bank; that some time between the 12th
and 16th of January, an agreement was entered into
with Mr. Kephart, whereby, in consideration that this
money was allowed to remain in this bank, or to be
so redeposited in the name of Kephart, the bank
would cause to be executed and delivered to the
treasurer a good and sufficient bond to secure its
safe keeping, return, etc.; that under this agreement
a bond was prepared by the treasurer and delivered
to Mr. McClure, who took the same to Montrose, to-
gether with the old certificates of deposit (which had
been endorsed to Kephart), with instructions that
upon the execution of the new bond to have it re-
turned, together with new certificates made in the
name of Kephart for the amount of the old ones;
that in compliance with this understanding Mr. Mc-
Clure returned to Montrose, arriving there upon
Saturday, the 16th, at which time he instructed the
cashier to have executed new certificates in the name
of Kephart, and to date them back as of date Jan-
uary 12th, the date Mr. Kephart was inducted into
office (which was done), evidently for the purpose of
having interest commence thereon as of that date.

The bond was not executed or at least not dated
until Monday, the 18th; all were then returned to
Denver together. The certificates were accepted by
Kephart in lieu of the old ones and the bond was ac-
cepted as security for these deposits. All of this
money remained on deposit thereafter. September
28th, 1897, the bank became insolvent, closed its
doors, refused to pay depositors, and immediately
made a general assignment for the benefit of its cred-

itors and passed into the hands of an assignee, and forever failed and refused to pay the amount of said deposit and interest, except a small portion which was paid by the assignee, being the treasurer's proportional share made out of its assets.

The bond reads as follows:

"Know all men by these presents, that we, Bank of Montrose, as principals, and J. E. McClure, F. H. Reinhold, Fred G. Farner, N. G. Clark, R. C. Diehl, J. M. Cunningham, J. W. Owens, A. E. Buddecke, James A. Fenlon, W. T. Ryman and George R. Hurlburt, as sureties, are held and firmly bound unto Geo. W. Kephart, Treasurer of the State of Colorado, in the just and full sum of Thirty Thousand 00-100 Dollars, for the payment of which well and truly to be made, we hereby bind ourselves, our heirs, executors and administrators, jointly and severally, firmly and by these presents.

"Sealed with our seals and dated the 18th day of January, A. D. 1897.

"The condition of this obligation is such that:

"Whereas, There is no depository provided by the State for the use of the Treasurer, who is nevertheless, absolutely responsible for the safe keeping of its funds, and

"Whereas, it has been heretofore customary and expedient to deposit the monies of the State in the name of the Treasurer in divers banks and banking institutions of the State of Colorado, to be by them held subject to the order and demand of the Treasurer, as the public welfare and requirements demand, and

"Whereas, large sums of money have accumulated in the State Treasury which have been so deposited and which may continue to so accumulate beyond the demands to be made thereon during the term of office of the said George W. Kephart, from which the people of the State are deriving no rev-

enue or benefit and which, for safe keeping, should be deposited in the name of the Treasurer in divers Banks aforesaid.

"Whereas, the said George W. Kephart, Treasurer as aforesaid, has determined and will deposit certain of the monies of the State of Colorado, for safe keeping, with and in the Bank of Montrose, of Montrose. The amount thereof shall be subject to withdrawal or diminution by the said George W. Kephart, as the requirements of his office shall demand, and which amount may be increased or decreased as the said George W. Kephart may determine, and

"Whereas, the said Bank, in consideration of the said deposits, has agreed to and will pay the said George W. Kephart, for the use and benefit of the State of Colorado, the sum of four per cent. per annum on account of said deposit, the same to be quarterly upon the daily average of the sum of such amount as the said bank shall have on deposit to the credit of said George W. Kephart, for the quarter or any fraction thereof next preceding the payment of said per centum, which shall be computed and credited to the account of said George W. Kephart, Treasurer, as a part of the said State funds, and the said George W. Kephart to be at once notified of said credit and the amount thereof.

"Now, therefore, if the said Bank of Montrose, of Montrose, shall well and truly keep all said sums of money so deposited, or to be deposited, as aforesaid, subject to the check and order of said George W. Kephart, Treasurer, as aforesaid, and shall pay over the same and each and every part thereof, to the said Treasurer upon his written demand therefor, and shall estimate, calculate and pay said per centum as aforesaid and shall, in the event said money or any part thereof remain in its custody after the expiration of the term of office of said George W. Kep-

hart, pay over such sum or sums to his successor in office, as shall be by him demanded and shall in all respects save and keep him, the said George W. Kephart and his sureties to the State of Colorado, harmless and indemnified for and by reason of the making of said deposit or deposits, then this obligation to be void, and of no effect, otherwise to be and remain in full force and virtue.''

The first material assignment urged is that the money sued for was not the money the bond was given to secure. The contention is that by the terms of the instrument the bondsmen assumed liability only for money which should be deposited in the bank after its execution, and counsel for the appellants lay great stress upon the position that sureties are the favorites of the law and their obligation is *strictissimi juris*. This is unquestionably true, but as well said in a leading case upon that subject, that of *The Ulster County Savings Institution v. Young*, 161 N. Y. 23:

''The liability of a surety is measured by his agreement, and is not to be extended by construction. His contract, however, is to be interpreted by the same rules which are applicable to the construction of other contracts. The extent of his obligation must be determined from the language employed when read in the light of the circumstances surrounding the transaction. Hence, where the question is as to the interpretation and meaning of the language by which a party has bound himself, there is no difference between the contract of a surety and that of a principal or other party sustaining a different relation. It is when the intention of the parties has been thus ascertained that the principal of *strictissimi juris* applies, and then it is that the courts guard the rights of the surety and protect him against a liability which is not strictly within the terms of his contract.''

As we understand it, the rule that a contract of surety is *strictissimi juris* is not a rule of construction, but a rule of application of the contract after its meaning has been ascertained, but that in ascertaining its meaning it is subject to the same tests as those applicable to any other written instrument. — *People, etc., v. Beach, Sheriff, et al.,* 113 Pac. (Colo.) 513; *Sather Banking Co. v. Briggs Co.,* 138 Cal. 724; *U. S. Fidelity & Guaranty Co. v. Board of Com'rs,* 145 Fed. 144; vol. 27 Am. & Eng. Enc. of Law, p. 450.

After a careful review of the opinion of the court of appeals, *supra,* we are of opinion that their conclusion in this respect was correct and should be affirmed.

In addition to the cases therein cited, we think that the reasons given concerning the injunction bond in the case of *Meyers v. Block,* 120 U. S. 206, sustain the reasoning of Judge Thomson in his construction of the bond here, and are specially applicable in that respect.

In addition to what Judge Thomson has said, it could also be urged that the construction for which counsel contend would render the bond ineffective, and make its execution a useless ceremony at the time it was entered into by the obligors and accepted by the appellee, as well as ever since, for the reason that no future deposits were intended to be made, at the time of its execution, and none have ever been made; hence, an indemnity against losses which did not exist nor could not have occurred up to the time of the bank's failure, was neither useful nor desired. That construction which sustains and vitalizes an agreement should be preferred to that which strikes down and paralyzes it. Such a construction should be placed upon a contract as will prevent its failure and will give effect to the obligation of each of the

parties appearing upon it at the moment the contract itself takes effect.

The second material question presented pertains to a failure of consideration. It is earnestly urged, by accepting the ruling of the court of appeals, that the promise to deposit funds in the future constituted a sufficient consideration for the execution of the bond. The answer sets up a failure of consideration in the fulfillment of this promise, and the proofs establish that no future deposits were made. In this respect it will be noted that the ruling of the court of appeals was based upon the pleadings as they then existed, and the opinion of that court was to the effect that the complaint showed that the money was on deposit in the name of Kephart at the time of the execution of the bond. The entire pleadings now before us and the evidence sustain the facts as first above stated, pertaining to which it might be consistently urged that the depositing of the money by the treasurer Kephart, or his redepositing of the same in his own name by surrendering the Mulnix certificates and taking new ones in his own name in lieu thereof, and the execution of the bond to secure him therefor, were all a part of one and the same transaction, and to all intents and purposes were done simultaneously as one act, and thereby that there was a deposit of funds in the future, or at the time of the execution of the bond, as contemplated by its terms.—*Sybert v. Harrison, etc.,* 88 Ky. 461. But it is unnecessary to make any ruling upon this question so earnestly urged upon oral argument by counsel for appellee, for the reason that, accepting the position of the appellant as correct, and assuming for the purpose of the case that this money was on deposit at the time of the execution of the bond, and that there was no money deposited by the treas-

urer after its execution, it does not follow that there was a failure of the consideration.

In this connection the first question which presents itself is, what was the consideration for the execution of the bond? The court of appeals held, that it was the promise in the bond to make deposits in the future, so that if the promise was the consideration, the promise was given in the bond and hence it did not and could not have failed. It is admitted by counsel that many respectable authorities hold that there can be no such thing as a failure of consideration.

In vol. 9, Cyc. of Law and Proc. at page 369, upon the question of failure of consideration, it is said:

"Strictly speaking, as has been well pointed out, there can be no such thing as a failure of consideration. The promisor either receives the consideration he has bargained for or he does not. If he does not, then there is no enforceable agreement, for there is no consideration; and if he does receive the consideration, how can it afterward fail? It may become less valuable or of no value at all, but that does not affect the agreement. Failure of consideration is in fact simply want of consideration. Nevertheless, it is laid down in a number of cases that when the consideration for a promise wholly fails, the promise is without consideration and unenforceable. But this must mean that in a contract with an executory consideration, the execution of the consideration is a condition precedent to the liability on the promise, and the failure to execute the consideration discharges the promisor."

But counsel urge that while the above is usually recognized as the law, and while they concede that such promise on the part of the treasurer, if performed, does furnish sufficient consideration for

the agreement on the part of the sureties to guarantee the payment of either a past or future indebtedness from the bank, or both; yet they do not concede that the mere naked promise of the treasurer, regardless of its performance, is a sufficient consideration to uphold the bond, but contend that the failure of the treasurer to perform his agreement to make future deposits is a good defense to an action on the bond. They claim that in several cases in this court and the court of appeals, it has been held that a mere naked promise, without its fulfillment, is not a sufficient consideration to enforce the obligation of the instruments, and that this rule is applicable here.

It will be unnecessary to pass upon this question for the reason that, assuming for the purpose of the case that counsel's position is correct, and that it is necessary to show that the promise had been complied with, or rather, that it had not been violated; it will be noted that the bond did not provide when such funds were to be deposited in the future, nor the amount of such deposits. Had the bondsmen desired to be advised of these matters in advance, they should have made inquiry as to what the agreement was on that subject, or had it inserted in the bond as to when future deposits were to be made and the amount thereof; not having done so, and the matter being made an issue by them, and these matters not having been covered in the bond, it was necessary and proper to resort to other evidence in order to ascertain what the contract was in this respect between the treasurer and the bank; when this was done, we find the undisputed evidence to be that it was agreed by the treasurer and Mr. McClure, upon behalf of the bank, that at any time after any of the $15,000 then in the bank should have been withdrawn the treasurer would, as soon as the state funds

permitted, deposit additional money in this bank, which, with that left on deposit with it, would equal the sum of $15,000; that the intention and agreement was, at all times, as far as possible, to keep the sum of $15,000 on deposit in the bank to be secured by a bond, which it was then agreed was to be furnished by the bank. This evidence in no way conflicts with the conditions of the bond, did not in any manner violate its terms and was competent for the purposes offered.—*Bonney v. Robertson et al.,* 6 Col. App. 485.

The record further shows that the bond bears date January 18th; that the bank became insolvent upon September 28th of the same year; that during this period all of the $15,000 was on deposit and the record does not show that any demand, request or claim had been made for other deposits, under the provisions of the bond, the contract upon the subject, or otherwise. Under these circumstances, if the promise in the bond to make future deposits was the sole legal consideration running to the bank for its execution, when considered in the light of the surrounding circumstances at the time the contract was entered into, we cannot say that there had been a failure of consideration or refusal to comply with the terms of the bond up to the time the bank failed.

The trial being to the court, we find no prejudicial error in the admission or rejection of evidence. For the reasons stated, the judgment is affirmed.

*Affirmed.*

Chief Justice Campbell and Mr. Justice Gabbert concur.

Decided April 3, 1911; time granted to petition for rehearing; no petition filed.