[L. A. No. 418.    Department Two.—September 1, 1898.]

## SAVINGS BANK OF SAN DIEGO COUNTY, Appellant, v. CENTRAL MARKET COMPANY et al., Respondents.

PROMISSORY NOTE—JOINT MAKERS—CORPORATION AND STOCKHOLD-ERS.—A promissory note, joint in form, executed by a corpora-tion, and by seven individuals, "as stockholders," is the joint note of the corporation and of the individuals whose names are signed thereto.

ID.—LIABILITY OF INDIVIDUAL SIGNERS—IMMATERIAL DESIGNATION. The question as to the liability of the individuals who signed the note "as stockholders" is to be determined upon an inspec-tion of the note; and as it imports upon its face an agreement by them to pay the note, and not merely to ratify its execution by the corporation, the fact that they promised to pay "as stockholders" is immaterial. It is also immaterial that the des-ignation of "trustee" was further appended to two of the signa-tures.

ID.—PAYMENT—NEW NOTE—EXPRESS AGREEMENT.—In the absence of an express agreement that a new note should be received as payment of a former note, the note cannot operate as such to extinguish the obligation of the former note.

ID.—NOVATION.—In order that the acceptance of a new note may operate to discharge a former note by novation, there must be an express agreement that the new obligation shall be substituted for the former.

ID.—NOTE SECURED BY SECOND MORTGAGE—LOSS OF SECURITY—PER-SONAL ACTION.—A personal action upon a note secured by a sec-ond mortgage is not prohibited by section 726 of the Code of Civil Procedure, after the security of the mortgage has been lost without the fault of the mortgagee, and through the failure of the mortgagor to pay the first mortgage, resulting in the foreclosure thereof, and sale of the mortgaged premises to pay the same.

ID.—FORECLOSURE OF FIRST MORTGAGE—PARTIES—RIGHTS OF JUNIOR MORTGAGEE.—Upon foreclosure of a first mortgage, a junior mortgagee, who is made a party, is not bound to set up his mort-gage and seek a foreclosure thereof by way of cross-complaint, especially when to do so would require the presence of. other parties. By making default in the action, he merely admits that his lien is subordinate to that of the first mortgage, and loses no rights by so doing.

ID.—NEGLIGENCE OF JUNIOR MORTGAGEE—SURETIES UPON NOTE.—The failure of the junior mortgagee to obtain a decree foreclosing his mortgage, the property having been exhausted in payment of the first mortgage, which it was the duty of the mortgagor

to pay, does not constitute negligence of the junior mortgagee, by which the security was lost to the injury of other makers of the note, besides the mortgagor, conceding them to be sureties to the effect that the security was sufficient to pay the debt.

ID.—CONSTRUCTION OF CODE—MODE OF ENTERING JUDGMENT FOR DEFICIENCY.—The particular mode of entering the personal judgment for the deficiency prescribed in section 726 of the Code of Civil Procedure is not important in the policy embodied in that section, which is designed to prevent a multiplicity of suits, and to compel the creditor first to exhaust his security. The mode therein provided is a privilege given to the mortgagee; and when it cannot be precisely followed, the security having been exhausted without fault of the mortgagee, before any suit is had in his favor, the entry of the personal judgment may be enforced in a separate personal action.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

W. T. McNealy, and Withington & Carter, for Appellant.

M. A. Luce, and William J. Hunsaker, for Respondents.

TEMPLE, J.—This action was brought by the plaintiff, a savings bank now in liquidation, to recover twenty-five thousand dollars and interest upon a promissory note, in words and figures as follows:

"$25,000.                San Diego, Cal., November 11, 1891.

"One year after date, without grace, for value received, we promise to pay to the order of Savings Bank of San Diego County, at their banking-house in the city of San Diego, the sum of twenty-five thousand dollars, with interest thereon from this date until payment at the rate of ten per cent per annum, payable quarterly, and if not so paid then to become part of the principal of this note and to bear like rate of interest till paid. Both principal and interest to be paid in United States gold coin. And we further agree that in the event of suit being brought against us, then there shall be added to any judgment against us rendered in said suit, as counsel fees, an additional sum of three per centum in like gold coin, upon the amount of the principal and

interest hereof accrued at the time of the entry of such judgment, or if paid before judgment and after action commenced, then on the amount at the date of payment.

"THE CENTRAL MARKET COMPANY,

"By J. H. Barbour, Pt.

"Bryant Howard, Secretary.

"Bryant Howard,
"J. H. Barbour, Trustee,
"M. H. Howard,
"M. H. Howard, Trustee,
"F. W. Stewart,
"Chas. S. Hamilton,
"J. H. Barbour.

·As Stock-holders."

It is alleged that the note was secured by a second mortgage upon certain real estate, that the first mortgage, which was given to secure the payment of the sum of fifty thousand dollars and interest, had been foreclosed in an action in which plaintiff was made a party defendant; that under said foreclosure the property was sold for the amount due on the first mortgage, and, there having been no redemption within the time allowed by law for a redemption, a deed had been executed to the purchaser and the security had become valueless without any fault on the part of plaintiff. Plaintiff therefore demands judgment for the, amount due on the note against all of the defendants.

The defendants Bryant Howard and M. H. Howard denied the execution of the note by them, and averred that they signed the note merely to ratify the action of the officers of the Central Market Company, which was the true debtor and maker of the note; that the note had been paid by the giving of another note, which was accepted in lieu of the note sued upon, and that plaintiff is precluded from maintaining the action by its failure to appear in the foreclosure suit mentioned in the complaint, and to obtain a deficiency judgment therein.

At the conclusion of the testimony on the part of plaintiff the court granted a motion for a nonsuit as to the individual defendants, which was based upon the grounds: 1. The complaint does not state a. cause of action and shows that the note sued

upon was not executed by them as their note; 2. The evidence shows that the said defendants did not execute the note to bind themselves individually, but signed the same merely as stockholders, for the purpose only of ratifying and giving authority to the acts of the officers who signed on behalf of the Central Market Company; 3. It appears that the note was secured by mortgage, which has not been foreclosed. Also, that the right of plaintiff to maintain the action was barred by the foreclosure of the first mortgage; 4. The note was paid by a new note before the action was brought; and 5. A novation is shown by which the plaintiff accepted a new note, guaranteed by certain parties, in lieu of the note sued upon.

The first two propositions may as well be considered together.

The case went off upon defendants' motion for a nonsuit, and there was really no evidence of the intent of the individual defendants in signing the contract, nor of knowledge of such intent on the part of the payee, except such as may be inferred from the surrounding circumstances. These amount to little beyond the fact that a mortgage was given to secure the note by the corporate defendant. All these matters are, however, immaterial, if, as I think, the question must be determined from a mere inspection of the instrument.

The question is argued on both sides, as though it involved the question whether the individual defendants signed the contract in a representative capacity or not; whether they intended their signatures to be taken as the signing of the contract by the corporation or not.

And hence many cases are cited in which the court has been called upon to determine whether one who has affixed to his signature the word agent, president, etc., is personally bound. But in all of those cases the construction was that the signature of the agent or other representative was intended to be and should be considered the signature of the principal, whereby the principal made the contract. It is not and never has been contended that Howard put his personal signature to this note for any such purpose. Such a contention is inconsistent with the defense made by, the defendants, and with the grounds upon which the motion for nonsuit was made and granted. The defense is,

that they signed the note as stockholders for the purpose of rati-
fication. Before they could ratify there must be something to
ratify. The idea implies at least a formal contract; and gen-
erally, and certainly in this case, that those who ratify do not
sign in a representative capacity. If they intended to ratify they
signed for themselves as stockholders, although the addition to
their signature of the phrase, "as stockholders," was of no conse-
quence. If that was their intent, then the purpose was to con-
firm the act of the officers in the execution of the contract, and
not to formally execute it for the corporation by their signatures.

It is obvious that the individual defendants did not sign the
note in a representative capacity, and there is nothing on the
face of the note which indicates any such intention, and, not-
withstanding the earnest and able argument of their attorneys,
such is not now their real contention. Now, what is their con-
tract? It reads, " we promise to pay," and if we substitute "The
Central Market Company promises to pay," then the signature
of Bryant Howard as stockholder becomes meaningless. It now
is in effect, "we, the Central Market Company and Bryant How-
ard, as stockholder, promise to pay" (making the first named
represent all). By what process, sanctioned by law, can this
contract, which is entirely unambiguous, be divided and changed,
and made to read that the corporation promises to pay, and
Bryant Howard as a stockholder ratifies the contract made in
the name of the corporation for the purpose of making it a
valid corporate act? The contract to pay and to ratify are rad-
ically different. That which was signed is an agreement to pay
only.

It must be kept in mind that no question has ever been or
could be raised as to the execution of the note by the corporation.
Its mode of signing in order to make it a valid corporate note is
beyond criticism. It does not appear that the power of its pres-
ident and secretary has ever been doubted, or that it could be.
There has never been a reason for such ratification, and, since
it is not claimed that the signers were all the stockholders, they
could not have ratified the execution of the note had it been
necessary that it should have been ratified. Furthermore, had
all the stockholders signed the note in the same way it could not

have been deemed a ratification, for the writing expresses no such intention, but, on the other hand, an unambiguous promise to pay. That they promised to pay as stockholders is as unimportant as it would have been had they promised as citizens of the United States. That may show why they promise to pay this debt, but it cannot affect their liability. The addition of trustee to some of the names is also immaterial. (*Brewster v. Sime,* 42 Cal. 139.)

2. The fourth and fifth points are substantially identical. There is no evidence which tends to show an express, or any, agreement that the new note should be received as payment. The action of the bookkeeper and his statements as to what Howard or Barbour said upon the subject do not even tend to prove such express agreement. In *Griffith v. Grogan,* 12 Cal. 317, Judge Field said: "Unless received by express agreement as payment, it did not extinguish the debt." This language is quoted with approval in *Comptoir D' Escompte v. Dresbach,* 78 Cal. 15, where the subject is again considered and the authorities cited. The last case is cited upon this point in *Savings etc. Soc. v. Burnett,* 106 Cal. 530, and the same doctrine is there announced. (See, also, *Dellapiazza v. Foley,* 112 Cal. 380.)

It will not help the defendants to call the transaction a novation. If it were a novation, then the new note was accepted as a discharge of the old one. It might as well be called payment. It still required an express agreement that one obligation shall be substituted for the other.

3. The note was secured by mortgage, and the mortgage has not been foreclosed. Moreover, there was a prior mortgage upon the property which was foreclosed; the plaintiff was a party defendant and duly served with summons. It did not appear in the action, and the prior mortgage was foreclosed as against it and the property sold for the debt secured by the first mortgage, and a deed had been made to the purchaser before this action was commenced. It is contended that under the provisions of section 726 of the Code of Civil Procedure the only mode in which plaintiff can obtain a personal judgment is to foreclose and take a deficiency judgment if the security proves insufficient. And, further, that as the plaintiff through its own neglect failed

to apply for and obtain such judgment in the action brought to foreclose the first mortgage, but allowed judgment to go against it, it is barred of any action whatever for the recovery of its debt.

Doubtless it was upon this ground that the learned judge of the trial court granted the motion for a nonsuit, basing its decision upon the ruling in *Brown v. Willis,* 67 Cal. 235.

That case differs from this mainly, if not solely, in that there the defendant appeared and set up his second mortgage and then allowed judgment to go against him, which did not recognize his lien or give him judgment for his debt. It was said he might have had his rights adjudged and did not, and is barred. In the opinion authority is quoted to the effect that a defendant in an action is bound by a judgment against him as to defenses which he might have made.

I am unable to comprehend the rationale of the decision, unless it was upon the theory that the second mortgagee had made himself an actor in the case—had put his rights as a mortgagee in issue and had then through his neglect allowed judgment to go against him adjudging that he had no lien or claim upon the premises. The only issue tendered to the junior mortgagee, by merely making him a party to a suit to foreclose brought by the prior mortgagee, is in the allegation that the right or claim of the junior mortgagee is subject to the lien claimed by the plaintiff in the foreclosure suit. As to any possible defense he may have to that issue so tendered, he is concluded by the decree whether he appears in the case or not. The doctrine appealed to does not and cannot go beyond that.

Aside from the legislative policy declared in section 726 of the Code of Civil Procedure, plaintiff was under no obligation to intervene, file a cross-complaint, and set up his mortgage and obtain a foreclosure in that action. Conceding that the individual defendants were merely sureties or guarantors to the effect that the security was sufficient to pay the debt, the question would be, Has plaintiff, by his neglect or otherwise, lost any part of the security to their injury? The failure to obtain a decree foreclosing its mortgage did not have that effect.

The question, then, is whether section 726 or the decisions of

this court prohibit a suit of this character under the circumstances. It has been held that a mortgagee cannot waive his security and bring a personal action. (*Barbieri v. Ramelli*, 84 Cal. 154.) And in the same case it was held that he cannot maintain a personal action even if the security is worthless because of prior liens. · It has also been held that, if he loses his right to foreclose through his negligence, he cannot then bring a personal action to recover his debt. (*Hibernia Sav. etc. Soc. v. Thornton*, 109 Cal. 427; 50 Am. St. Rep. 52.)

On the other hand, it has been held that, after the mortgage security has been exhausted, a personal action may under some circumstances be maintained for the deficiency.

In *Vandewater v. McRae*, 27 Cal. 596, after foreclosure, a sale and judgment for a deficiency, plaintiff was allowed to sue an indorser of the note. In *Blumberg v. Birch*, 99 Cal. 416, 37 Am. St. Rep. 67, one who had foreclosed his mortgage against an absent mortgagor, where a personal judgment could not be entered, was allowed afterward to maintain a personal action to recover the debt still unpaid. It was there said that it does not follow that "after the mortgage security has been exhausted, leaving a deficiency which is no longer secured, no new action on the note can ever be maintained." In *Merced Bank v. Casaccia*, 103 Cal. 641, suit was brought to foreclose a mortgage given to secure a note which had been assigned as additional security for another note which was also secured by mortgage. The principal note had been foreclosed, and a subsequent suit to foreclose the mortgage given to secure the note assigned as collateral. It was contended that plaintiff could not maintain this second suit, but should have brought one suit to foreclose both mortgages. It was held that, having foreclosed the principal mortgage and having exhausted the security, plaintiff could maintain this action on the second mortgage. It was said: "The obvious purpose of the statute is to compel one who has taken a special lien to secure his debt, to exhaust his security before having recourse to the general assets of the debtor. When he has done this, or when without his fault the security has been lost, the policy of the law does not prohibit a personal action." (See, also, *Donaldson v. Grant*, 15 Utah, 231.)

Was not the security lost in this case without fault on the part

of plaintiff?   It was the fault of the mortgagor, and not of the junior mortgagee, that default was made in the payment of the first mortgage and that it became necessary to foreclose it.   I know of no rule of law or equity which required the second mortgagee to bring suit to recover his debt when the first mortgagee saw fit to do so.   It is apparent that had he foreclosed he would have received nothing.   I cannot conceive upon what theory the mortgagor or any of the payors can complain that he did not do so.

Plaintiff has no longer a lien upon the property, and his debt is not now secured by mortgage.   He did not voluntarily release his security.   He has not waived nor lost it by his negligence. It was lost by the fault of the mortgagor in not paying the first mortgage.   If there had been a surplus, and the plaintiff had failed to get it by his neglect, it might be different.   I see no difference now between this case and the case  suggested in *Toby v. Oregon etc. R. R. Co.*, 98 Cal. 490, of a mortgage upon a ship which had been burned.   Plaintiff has no security or lien and it has not been lost through its neglect.

The particular mode of entering the personal judgment for the deficiency is not an important matter in the policy inaugurated in section 726.   The important matter was to prevent a multiplicity of suits and to compel the creditor to first exhaust his security.   The mode provided for the entry of the judgment is a mere matter of convenience—is, in fact, a privilege given to the mortgagee.   As we have seen, where this cannot be done a separate personal action may be had.   Here if plaintiff had filed a cross-complaint in the action to foreclose, other parties would have been necessary.   I see no difference in principle or any injury to defendants in the course pursued.

Under these views, the evidence which was excluded by the ruling complained of does not seem important.

The judgment and order are reversed, and a new trial ordered.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.