[Civ. No. 3732.   Second Appellate District, Division One.—November 10, 1921.]

FLORENCE A. ANDREWS, as Executrix, etc., Appellant, v. THE FIRST NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent.

[1] Promissory Note—Renewal—Extinguishment of Debt.—A renewal note does not extinguish the debt represented by a note for which it is given in lieu, unless there is a distinct and unqualified agreement that it shall so operate.

[2] Pledge—Return of Property—Payment of Debt—Statute of Limitations.—A pledgor or his representative possesses no right to require the return of pledged property until the debt for which it was given as security is paid and satisfied, regardless of the length of time which may have elapsed since such debt was created.

[3] Id.—Deposit of Securities—Collateral for Existing Indebtedness and Future Advances—Death of Joint Pledgor—Subsequent Advances—Nonliability of Estate.—A pledge of securities with a bank as collateral security for the payment of a present indebtedness and for future advances cannot be extended so as to bind the estate of one of the pledgors for advances made to the other subsequent to the death of the former, since upon such death the pledge agreement between the parties became inoperative.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

---

1. Renewal note as discharging original note, note, **Ann. Cas. 1915A,** 1084, 1094.

The facts are stated in the opinion of the court.

Willedd Andrews, S. W. Odell and Tanner, Odell & Taft for Appellant.

Gibson, Dunn & Crutcher and H. F. Prince for Respondent.

JAMES, J.—By this action plaintiff in her representative capacity sought to secure a judgment requiring the defendant to deliver to her a certificate for 150 shares of stock in a California corporation, alleged to be of the value of $15,000. Incidental relief, that pending the determination of the action defendant be restrained from converting said stock or disposing of the same in any way, was prayed for. Defendant had judgment; plaintiff appeals.

The stock in question had been deposited with the defendant, along with other securities of Robert Marsh and J. E. Marsh, prior to the death of J. E. Marsh, plaintiff's testator, which occurred on April 1, 1917. On November 11, 1914, J. E. Marsh and Robert Marsh, being then indebted to the defendant in various amounts, deposited with the latter six certificates representing the ownership of shares in various corporations, together with six promissory notes of third persons, altogether and on their face representing in value a large amount of money. Among the stock was a certificate for 300 shares of California Delta Farms, Inc., which was in the names of J. E. Marsh and Robert Marsh. This stock was afterward divided and, in lieu of the one certificate, two certificates were made a part of the deposit, each representing 150 shares and being issued in the names respectively of J. E. Marsh and Robert Marsh. All of the securities mentioned were deposited subject to the terms of a written pledge agreement which was at the date last mentioned executed by J. E. Marsh and Robert Marsh. This agreement recited that whereas the parties were indebted to the defendant bank "in sundry amounts, real and contingent, due and to become due, and expect from time to time to incur further indebtedness to the said bank, Now, therefore, we the undersigned, Robert Marsh and J. E. Marsh, pledge and deposit with the First National Bank of Los Angeles as collateral security for the payment of each and every liability, or liabilities, of the undersigned

Robert Marsh and J. E. Marsh, or either of them, to the said First National Bank of Los Angeles, due or to become due, or that may be hereafter contracted, whether represented by notes, drafts, acceptances, or in open account, whether real or contingent, the following property." An enumeration of the securities followed the provision quoted, and the agreement proceeded with this recital: "With this condition that the First National Bank of Los Angeles has the right to call at any time for such additional security as it may deem proper, and on the nonpayment of any liability or liabilities as above mentioned according to the terms and conditions thereof, the First National Bank of Los Angeles, its successors or assigns, is given full power and authority to collect or sell, assign or deliver the whole or any part of the above named securities, or any substitute therefor, or any addition thereto, at public or private sale, at any time or times hereafter, without demand, advertisement or notice, such demand, advertisement or notice being hereby expressly waived, and upon such sale the said First National Bank of Los Angeles, or the holder thereof, may become the purchaser of the whole or any part of such personal property, discharged from any right of redemption; and after deducting all legal or other costs and expenses for collection, sale and delivery, may apply the residue of the proceeds of such collection, sale or sales, to pay any, either or all of said liabilities, as said First National Bank of Los Angeles, its successors or assigns, shall deem proper, returning the overplus to the undersigned. And the undersigned agrees to pay the holder thereof any deficiency upon demand." At the time of the death of J. E. Marsh there was apparently due to the defendant amounts represented by two promissory notes which were secured by the pledged property, to wit: One note for the principal sum of $11,937.50, dated March 7, 1917, signed by Robert Marsh & Company and Robert Marsh; also indorsed by Robert Marsh. The second note was for the principal sum of $8,000, dated March 20, 1917. From the transcript of the testimony we are unable to determine definitely by whom the latter note was signed, although it is stated in the briefs of appellant that it was made by Robert Marsh & Co. Subsequent to the death of J. E. Marsh there was collected and credited on the $8,000 note

the sum of $4,000, and several renewal notes were taken covering the amounts remaining unpaid on the two notes. These renewal notes were signed variously by Robert Marsh & Company, Inc., Robert Marsh & Company, and Robert Marsh. It is stated in the briefs that there existed the corporation known as Robert Marsh & Company and also the individual business name of Robert Marsh & Company not incorporated. The testimony does not fully disclose the distinction between the two. However, we think it is immaterial to any of the questions presented as to whether the renewal notes were by the alleged corporation or by the fictitiously designated "company." The fact remains undisputed that at the time of the death of J. E. Marsh there was an apparent undischarged indebtedness on account of the two notes for which the shares of stock sought to be recovered had been given in security. Appellant's first contention rests upon the assumption that the renewal notes taken after the death of J. E. Marsh discharged the indebtedness existing at the date of his death and became new engagements. Conceding that the pledge agreement hereinbefore referred to would not be binding upon the estate of J. E. Marsh for any obligation of Robert Marsh incurred subsequent to the former's death (a question which is further referred to in connection with appellant's second contention), and, that the only claim of the bank against the security sought to be recovered is on account of such new obligation, then the defendant is without right to the possession of the stock. [1] But it is fully established that a renewal note does not extinguish the debt represented by a note for which it is given in lieu, unless there is a distinct and unqualified agreement that it shall so operate. In its evidence this case is like that considered in *Savings Bank of San Diego County* v. *Central Market Co.,* 122 Cal. 28 [54 Pac. 273], where the court says: "There is no evidence which tends to show an express, or any, agreement that the new note should be received as payment. 'Unless received by express agreement as payment, it did not extinguish the debt,'" citing *Griffith* v. *Grogan,* 12 Cal. 317. In *Sather Banking Co.* v. *Briggs Co.,* 138 Cal. 724 [72 Pac. 352], discussing the effect of a renewal note, the court there said: "It was the same indebtedness, and the renewal of it was simply a prolongation of the

original contract for its payment. The general rule is that the renewal of notes does not amount to payment. (*Savings Bank of San Diego County* v. *Central Market Co.*, 122 Cal. 35 [54 Pac. 273].) The presumption is that they were not so taken." Decisions which treat of the release of sureties and guarantors whose obligations are strictly limited are not applicable in this case. Both of the Marshes entered into the pledge agreement with the bank as principals; presumptively they were engaged in a joint enterprise attended by considerations mutual as between themselves. The entire agreement is so characterized by its terms and the defendant had the right to rely upon the conditions thereof. [2] Assuming that the plea of the statute of limitation might have some place under the facts of the case as is suggested by appellant, still the pledgor, or his representative, would possess no right to require the return of pledged property until the debt for which it was given as security is paid and satisfied, regardless of the length of time which may have elapsed since such debt was created. This proposition is settled beyond the reach of dispute by California decisions: *Puckhaber* v. *Henry et al.*, 152 Cal. 419 [125 Am. St. Rep. 75, 14 Ann. Cas. 844, 93 Pac. 114]; *Savings Union Bank etc. Co.* v. *Crowley*, 176 Cal. 543 [169 Pac. 67].

[3] That the terms of the pledge agreement cannot be extended so as to bind the estate of J. E. Marsh for advances made by defendant bank to Robert Marsh or on his behalf subsequent to the death of said J. E. Marsh, seems not to be a matter seriously disputed by the argument presented. Indeed, it must be admitted as an unanswerable legal proposition that, upon the death of J. E. Marsh, that term of the pledge agreement providing that the security should be holden for future advances became then inoperative. It is in view of this situation that counsel for appellant make their second contention against the validity of the judgment. It is by them insisted that the evidence shows that portions of the securities deposited under the pledge agreement were converted into cash and applied upon new indebtedness of Robert Marsh or Robert Marsh & Co. created after the death of J. E. Marsh. If it is a fact that the notes bearing date subsequent to the death of J. E. Marsh were in fact renewals, the evidence disclosed by the

record does not so establish. The testimony of the bank officer was clear enough to the point that the notes, for which the stock sued for was being held, were in fact renewal notes of indebtednesses accruing prior to the death of J. E. Marsh, but the same testimony was not given as. to the indebtedness which the bank discharged by the sale of securities subsequent to the death of said Marsh. For instance, in a written memorandum admitted in evidence as "Exhibit A," an executive officer of the bank set forth that 175 shares of Mortgage Guarantee stock standing in the name of Robert Marsh were sold on dates in 1918, 1919, and 1920, and proceeds applied on notes of Robert Marsh dated variously in July, 1917, April and May, 1919. The aggregate sum of money collected upon the sale of this stock exceeded $17,000. There was also noted the sale of 150 shares of Delta Farms stock, for which $8,997 was received, which money was applied on a $20,000 note of Robert Marsh & Co. dated April 13, 1919. It appeared by the testimony of the same witness that J. E. Marsh had, after the pledge agreement was made, executed both individual notes and notes in other form, but that these notes had all been paid. Upon the face of the testimony of the bank official, we think that it was established *prima facie* that application of pledge security money was made in discharge of indebtednesses of Robert Marsh or Robert Marsh & Co. created subsequent to the death of J. E. Marsh, and that the amount realized on such securities was in a sum in excess of that still claimed to be due the bank on the unpaid notes before mentioned. If that evidence represents the true situation, then the bank must be deemed to have in its hands money realized upon the sale of pledge securities more than sufficient to satisfy all of the remaining debt which arose under the pledge agreement; hence, it would follow that the stock, to recover which this action is brought, would be freed from any charge arising on account of the contract of J. E. Marsh, deceased. From the conclusions expressed it follows that plaintiff is entitled to a new trial.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.