[Civ. No. 2695. Third Appellate District.—April 30, 1924.]

## PEOPLES STATE BANK (a Corporation), Respondent, v. B. PENELLO, Appellant.

[Civ. No. 2696. Third Appellate District.—April 30, 1924.]

## PEOPLES STATE BANK (a Corporation), Respondent, v. GEORGE BERTAINA, Appellant.

[1] Promissory Notes — Assignment as Security — Fraud — Innocent Holder—Evidence—Burden of Proof.—In an action by a bank to recover on promissory notes taken as collateral security for the payment of a pre-existing debt, where the defendants have shown that the execution of the notes was induced by fraud, the burden is cast upon the bank to show that it·is an innocent holder of the notes; and where the bank has met this burden by showing that the notes were assigned to it, before maturity, as collateral security for the payment of a debt owing by the payees of the notes in suit, the burden then rests upon the defendants to show that the bank took the notes under circumstances creating the presumption that it knew the facts impeaching their validity.

[2] Id.—Knowledge of Fraud—Evidence—Presumption—Directed Verdict.—In such an action, where the bank has shown that it is an innocent holder of the notes sued upon, and, from the facts and circumstances shown by the evidence, no reasonable inference can be drawn to the effect that the bank had knowledge of the fraudulent inception of the notes at the time they were indorsed, and, therefore, the evidence will not furnish a sufficient basis upon which to rest a verdict in favor of the defendants, the trial court does not err in directing verdicts in favor of the bank on this issue.

[3] Id. — Assignment for Collection — Evidence. — In such action, neither the fact that the bank had agreed to reduce the notes in suit to judgment and apply the proceeds of its recovery against defendants to the credit of the payee of the notes, as partial satisfaction of the indebtedness of said payee to the bank, nor the fact that said payee was defraying the expenses of the litigation, established that the bank was the holder of the notes in suit for the purpose of collection only.

[4] Id. — Indorsement of Renewal Note by Stockholders — Novation.—The mere fact that the original note executed by the company named as payee in the notes in suit to the bank, and for which the notes in suit were indorsed to the bank as collateral

---

1. See 19 Cal. Jur. 1038; 3 R. C. L. 1039, 1042.
2. See 26 R. C. L. 1073.

security, was signed only by the company, whereas the new note which was executed after the notes in suit had been indorsed to the bank, and after suit had been brought thereon, was indorsed by the stockholders of said company, furnished no evidence upon which to submit the issue of novation to the jury, and the trial court was justified in directing verdict in favor of the bank as to the same.

[5] ID.—RENEWAL NOTE—NOVATION.—Novation is the substitution of a new obligation for an existing one; and a renewal note does not extinguish the debt for which it is given in lieu, unless there is a distinct and unqualified agreement that it shall so operate.

[6] ID.—RELEASE OF ORIGINAL DEBTOR—IMPLICATION—EVIDENCE—INTENT.—While a release of the original debtor by a novation of a contract may be established by implication, such implication cannot arise until there is evidence showing facts and circumstances from which it might reasonably be inferred that the creditor intended to release the old debtor or to extinguish the old obligation.

[7] ID. — ASSUMPTION OF INDEBTEDNESS BY SUCCESSOR OF ORIGINAL DEBTOR—NOVATION.—The fact that the original debtor conveyed its business and assets, both real and personal, subject to its liabilities, to another corporation, that the latter assumed to pay such liabilities, that the original debtor thereafter became inactive in business, that the corporation assignee had been paying the interest on the note held by the bank, and that the interest was being paid by said corporation, did not constitute substantial evidence of a novation.

[8] ID.—ISSUES—ARGUMENT OF COUNSEL.—In these consolidated actions upon promissory notes, the trial court having properly directed the jury to return verdicts in favor of plaintiff on the main issue involved, and submitted to them the question as to the attorney's fees alone, it was not error to limit the argument of counsel to the issue of attorney's fees.

---

(1) 8 C. J., p. 488, sec. 703, p. 984, sec. 1292, p. 989, sec. 1295, p. 1046, sec. 1358.    (2) 8 C. J., p. 1047, sec. 1358.    (3) 8 C. J., p. 1046, sec. 1358.    (4) 29 Cyc., pp. 1130, 1134, 1135.    (5) 29 Cyc., pp. 1130, 1131.    (6) 29 Cyc., p. 1139.    (7) 29 Cyc., p. 1139.    (8) 38 Cyc., p. 1479.

---

5.   See 20 R. C. L. 363, 365.

6.   Release of original debtor as a condition of novation by substitution of debtors, note, L. R. A. 1918B, 113.

Whether release of original debtor may be established by implication, note, Ann. Cas. 1912D, 508. See, also, 20 R. C. L. 372.

8.   See 2 R. C. L. 405.

APPEALS from judgments of the Superior Court of Merced County. Stanley Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. W. Henderson for Appellants.

W. N. Graybiel for Respondent.

YOUNG, J., *pro tem.*—These two actions were consolidated and tried together before the same jury. Judgments were rendered in favor of plaintiff on directed verdicts, and from these judgments the defendants appeal. The actions have been twice tried, and this is the second time that they are before this court. The first trial resulted in verdicts and judgments in favor of defendants, and upon appeals, prosecuted by plaintiff, the judgments were reversed. (See *Peoples State Bank* v. *Penello,* 59 Cal. App. 174 [210 Pac. 432].) The actions were commenced on April 22, 1921, and they were first tried in October of that year. The trial resulting in these appeals was had in November, 1923. In each action the plaintiff, hereinafter referred to as the bank, sues on three promissory notes for the aggregate sum of $1,000, made by the defendant in favor of Hunt-Jewett-Bontz Company, a California corporation, and by it transferred to the bank. The notes were given for subscriptions for stock of the said company, and the defendants claim they were induced to sign them by fraudulent representations made by the stock salesmen. They admit the execution of the notes, but resist payment on three grounds, predicated on their fraudulent inception, first, that the bank took the notes with notice of the fraud; second, that the bank is a holder for collection only, and, third, that with notice of the fraud the bank entered into a new arrangement with the company, and with the assignee of the company, which said new arrangement constituted a novation and released defendants from liability. Practically the same defenses were made by the defendants in the first trial, and it was held by this court on the former appeal in these causes that the evidence was insufficient to establish such defenses. On the second trial the trial court

directed the verdicts for plaintiff upon the ground that the evidence was not sufficient to support these defenses nor any of them.

The principal ground urged by defendants for the reversal of the judgments is that the court erred in directing the verdicts for plaintiff because there was substantial evidence showing, first, that the bank had notice of fraud, and, second, that the bank was a holder of the notes for collection only, and, third, novation.

[1] There was substantial evidence of the fraudulent nature of the representations made to induce the execution of the notes in suit. Indeed, the evidence on this phase of the cases was strong and convincing, and stands uncontradicted in the record. Proof of the fraud having been thus shown, the burden was cast upon the bank to show that it was an innocent holder of the notes. The rule governing courts in the determination of the sufficiency of the evidence in cases of this kind is set forth in *Eames* v. *Crosier*, 101 Cal. 260 [35 Pac. 873], as follows: "Upon proof by the defendant of fraud or illegality in the inception of the notes, the burden is cast upon the endorsee to show that he is an innocent holder. This the latter may do by showing that he purchased the note before maturity, or from an innocent endorsee for value in the usual course of business. When this is done, unless the evidence shows that the note was taken by the plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show if he would defeat the plaintiff in his action, that the latter took the instrument with notice of the defendant's equities."

The rule is quoted with approval in *Commercial Bank* v. *Moretti*, 177 Cal. 256 [170 Pac. 419], and also in the opinion of this court in the former appeal of this action.

The bank has shown in these cases that the notes in dispute were assigned to it before maturity as collateral security for the payment of a debt owing by the Hunt-Jewett-Bontz Company, assignor, to it as assignee. This being the case, the bank has sustained the burden cast upon it by the indorsement of the notes. It therefore follows that the burden rested upon the defendants to show that the bank took the notes under circumstances creating the presumption that it knew the facts impeaching their validity.

[2] It is argued by the defendants that under the rule of law as above quoted they have sustained the burden of showing that the bank took the notes under circumstances which show that it had knowledge of the fraud, and they rely principally upon the evidence of J. E. Weaver, the president of the bank, called as their witness, to establish their contention. By the testimony of this witness it is shown that for months prior to the transfer of the notes in suit the company had been indebted to the bank in the sum of $10,300, evidenced by notes for $1,500, $5,600 and $5,000, respectively, the amounts due on the two former notes being $1,300 and $4,000, respectively. The loans were only partially secured, and payments were not being made. The bank knew of heavy losses by the company, and was dissatisfied with the condition of the loans, and urgently insisted upon a rearrangement. On July 16, 1920, in compliance with the demand of J. E. Weaver for payment of part of the loan and additional security for the balance, the company, acting through Bontz, paid the $1,300 note, and transferred the notes in suit and other notes to the bank. The principal part of Weaver's testimony relied on by defendants to show circumstances from which it can be inferred that the bank knew of the facts impeaching the validity of the notes, is, in substance, as follows: "At the time the bank took the notes, I surmised in a general way that Hunt-Jewett-Bontz Company was heavily involved. I knew that the first year of their storing sweet potatoes there that they could not help but to have made a loss, because they stored a good many potatoes and they rotted to a great extent. I knew in a general way they were heavily involved. I suspected that they had not made any money, that was sure, but as to their actual condition I don't know to this day. I would not say what Mr. Bontz said to me as to what the company had taken the notes for. My understanding was that some of them had been for stock of Hunt-Jewett-Bontz Company, and others for seed potatoes. I knew the company was trying to sell stock. This note (one of the notes in suit) was the first note that the Hunt-Jewett-Bontz Company ever gave the bank endorsed by the principal stockholders. Since that time every note made by the company to the bank has been endorsed by the stockholders."

Weaver further testified in reference to a transaction had on May 17, 1921, when a new note was demanded of the company by the bank: "To make that clear, they, Mr. Hunt, Mr. Jewett and Mr. Bontz, called upon us at the bank and in a conversation about the notes we entered into this agreement. The substance of it was that we would renew this note and give them six months in which to pay the balance on it if they would pay all except $5,000, which they proceeded to do. And the question of these other notes came up that suit is being brought on. The suit had already been started before that, and we agreed with them that we would press the suit and give them credit on these notes for whatever funds came from them at any time that we made any collections on them. That is on any other notes we had, and they was to be given credit on this note regardless of its having been a time note, and for the remainder of this note they were to have six months in which to pay it off."

We are satisfied that from the facts and circumstances shown by the evidence no reasonable inference can be drawn to the effect that the bank had knowledge of the fraudulent inception of the notes in suit at the time they were indorsed, and therefore the evidence would not furnish a sufficient basis upon which to rest verdicts in favor of the defendants, and it is our conclusion that the trial court did not err in directing verdicts on this issue.

[3] The contention of defendants that the bank is a holder of the notes in suit for collection only, is based principally upon the fact that on May 21, 1921, the company's note for $5,000, held by the bank, for which these notes were held as collateral security, was renewed, and that at the time of the renewal the bank entered into an agreement with the principal stockholders of the company to press these suits and to apply the proceeds of its recovery against defendants to the credit of the company. We think that the bank's agreement to reduce these notes to judgment, and to apply the proceeds of any collection made by it to the payment of the company's note, furnishes no evidence from which it might be inferred that it was holding the notes for collection only. If the credit of the company was impaired, as the evidence shows, it was to the interest of the bank to realize on its security and to reduce

the company's indebtedness to it, if possible. Nor do we think that the further fact, shown by the evidence, that the bank is not defraying the expenses of this litigation, furnishes any evidence that the bank is a holder for collection only. It was to the interest of the bank to collect the notes without expense on its part, and for it to arrange with the company to pay the expenses of the litigation was only a matter of business expediency. We think the evidence furnishes no issue on this point that should have been submitted to the jury.

[4] Defendants contend that the following transaction shows novation. The original note of the company for which the notes in suit were given as security was signed only by the company. The renewal note given in May, 1921, was indorsed by the stockholders of the company. We see nothing in this transaction that would not be reasonably expected as a matter of business prudence on the part of the bank. The company was involved, and the effort of the bank to obtain further security for the indebtedness is only evidence of business expediency on its part, and we think this transaction furnished no evidence upon which to submit the issue of novation to the jury, and the trial court was justified in directing the verdicts as to the same.

In October, 1921, the company made and delivered to the bank a note for $15,000, and at the same time executed a trust deed on real estate to secure the same. It is not shown that the indebtedness evidenced by the $5,000 note was included in this larger note.

[5] Novation is the substitution of a new obligation for an existing one. (Civ. Code, sec. 1530.) It is made either by the substitution of a new obligation between the same parties with intent to extinguish the old obligation, or by the substitution of a new debtor in place of the old one, with intent to release the latter. (Civ. Code, sec. 1531.)

"A renewal note does not extinguish the debt represented for which it is given in lieu, unless there is a distinct and unqualified agreement that it shall so operate." (*Andrews* v. *First National Bank of Los Angeles,* 55 Cal. App. 138 [203 Pac. 156] ; *Savings Bank* v. *Central Market Co.,* 122 Cal. 28 [54 Pac. 273] ; *Sather Banking Co.* v. *Briggs Co.,* 138 Cal. 724 [72 Pac. 352].)

[6] Defendants argue that the release of the original debtor by a novation of a contract may be established by implication. It is conceded that such is the law. Such implication cannot arise, however, until there is evidence showing facts and circumstances from which it might reasonably be inferred that the creditor intended to release the old debtor or to extinguish the old obligation. We perceive that no such facts and circumstances have been shown.

[7] It appears that the Hunt-Jewett-Bontz Company, in April, 1922, conveyed all its business and assets, both real and personal, to California Sweet Potato Corporation, subject to its liabilities, and that the grantee assumed to pay such liabilities; and it further appears that the Hunt-Jewett-Bontz Company thereafter became inactive in business, and that the California Sweet Potato Corporation has been paying the interest on the note held .by the bank. It also appears that the bank knew that the interest was being paid by the California Sweet Potato Corporation. Defendant urges that this also shows novation. We think there is no substantial evidence of novation, and, therefore, that the court did not err in directing the verdicts.

Defendants complain of rulings of the trial court in sustaining objections to questions propounded by their counsel. There are many of these questions, and we can see no good purpose to be served in setting them out. An examination of these questions convinces us that no prejudicial error was committed by the trial court in the exclusion of evidence. Some of these questions were proper in form and elicited evidence pertinent to the inquiry. An examination of the record shows, however, that as to each of them the evidence called for was produced in response to other questions. As to other questions, to which answers were not permitted, we are satisfied that the rulings of the trial court thereon were proper.

[8] The trial court limited the argument of counsel to the issue of attorney's fees, and defendants complain of this as error. Since the court properly directed the jury to return verdicts in favor of plaintiff on the main issue involved, and submitted to them the question as to attorney's fees alone, it was proper for it to limit the argument to the issue as to the attorney's fees.

Defendants complain of the ruling of the trial court in denying their motion for a new trial: No points are made as to this ruling not above discussed, and we think the court did not err in this ruling.

We think the judgments should be affirmed, and it is so ordered.

Plummer, J., and Finch, P. J., concurred.

Petitions by appellants to have the causes heard in the supreme court, after judgment in the district court of appeal, were denied by the supreme court on June 26, 1924.

All the Justices concurred.