Filed 9/9/14  Skordoulis v. Fidelity National Title Co. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JOHN SKORDOULIS, | D065947 |
| Plaintiff, Cross-defendant and Appellant, | |
| v. | (Super. Ct. No. INC091596) |
| FIDELITY NATIONAL TITLE CO. et al., | |
| Defendants and Respondents; | |
| DAVID SALEHINIA et al., | |
| Defendants, Cross-complainants and Appellants, | |
| MAUREEN A. CHODOSH et al., | |
| Plaintiffs and Respondents. | |

APPEAL from a judgment and a postjudgment order of the Superior Court of

Riverside County, Harold W. Hopp, Judge.  Judgment affirmed; postjudgment order

denying attorney fees reversed in part.

John Skordoulis, in pro. per., for Plaintiff, Cross-defendant and Appellant John Skordoulis.

Larry Joe Lichtenegger for Defendants, Cross-complainants and Appellants.

Crawford Weinstein and Henry Gold Weinstein for Plaintiff and Respondent Maureen Chodosh.

W. Raymond Bengert for Plaintiff and Respondent Penny A. Bengert.

## I.

## INTRODUCTION

Appellant John Skordoulis appeals from a judgment in favor of defendants Fidelity National Title Co.; S.B.S. Trust Deed Network; Donald S. Albright, Jr.; Robert S. Cuva; Mary V. Cuva; William E. Gammons; Arno W. Heckrodt; Shannon E. James; Salvatore P. Maiorana; Lany K. Martell; Linda Miller; James Miller; Michael Gene Moeller; Patricia L. Moeller; George W. Piercy; Juliet F. Piercy; Gordon M. Robertson; Peggy Roth, and David Salehinia.[1] The individual defendants appeal from a postjudgment order of the court denying their motion for attorney fees from plaintiffs and respondents Maureen A. Chodosh and Penny A. Bengert.

We affirm the trial court's judgment. However, we reverse the trial court's postjudgment order insofar as the order denied the individual defendants attorney fees from Chodosh and Bengert.

_____

[1] We will refer to the noncorporate defendants—i.e., all of the defendants except Fidelity National Title Co. and S.B.S. Trust Deed Network—as "the individual defendants."

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

This appeal arises from an action filed by Skordoulis against the defendants after the defendants initiated nonjudicial foreclosure of property that Skordoulis owned in the Palm Springs area (the Palm Springs property).  Skordoulis contended, among other things, that the individual defendants were not entitled to enforce a promissory note (the Note) that Skordoulis had executed in favor of Cedar Funding, Inc., to obtain a loan to purchase to the Palm Springs property, despite the fact that the individual defendants had each purchased a fractionalized interest in the Note from Cedar Funding, Inc.  Cedar Funding, Inc. was a company created by David A. Nilsen, who, at the time the loan was originated, was a licensed real estate broker.  Nilsen arranged, negotiated, and serviced real estate loans, doing business as Cedar Funding, as distinguished from Cedar Funding, *Inc*., including the loan at issue in this case.  After Skordoulis obtained the loan, he obtained separate additional loans from plaintiffs Chodosh and Bengert, both of which were also secured by the Palm Springs property.

On the first day of trial, the parties presented the trial court with an "Omnibus Stipulation of Facts."  With one exception, all of the facts necessary to the court's legal decision as to whether the defendants were entitled to enforce the promissory note against Skordoulis were included in the Omnibus Stipulation of Facts.  The single remaining factual issue was whether Nilsen, doing business as Cedar Funding, had held and

serviced the promissory note, or rather, whether Cedar Funding, Inc., was the entity that had done so.

The stipulated facts, as presented by the parties, were as follows:

"1) David A. Nilsen, dba Cedar Funding, operated a mortgage loan business in Monterey, California. . . . David A. Nilsen was a California licensed real estate broker doing business as Cedar Funding . . . ;

"2) David A. Nilsen was the sole shareholder and President of Cedar Funding, Inc. Cedar Funding, Inc. was never a licensed California real estate broker[;]

"3) On January 18, 2006, Skordoulis filled out a formal application for a loan of $925,000 to purchase the land which is the subject of this action ('Loan #5197,' or the 'land loan') . . . ;

"4) As part of the Loan #5197 transaction, the parties executed certain loan-related documents . . . ;

"5) On January 19, 2006, Loan #5197 funded at Fidelity National Title . . . with the execution of the $925,000 Note to Cedar Funding, Inc. . . . and the recording of the Deed of Trust . . . ;

"[¶] . . . [¶]

"8) Between February 1, 2006 and September 1, 2006, Loan #5197 was sold and assigned to Defendants herein on the dates and in the amounts shown below . . . :

"[¶] . . . [¶][2]

"11) In connection with each Defendant['s] investment, he or she received a loan package evidencing his or her individual purchase of a fractionalized interest in Loan #5197 in substantially the same form as that received by Donald S. Albright, Jr. . . . Each loan

---

2    The parties included a chart showing each individual defendant's fractional interest in the loan and the date of that investor's investment.

package included a cover letter from David A. Nilsen, broker, on Cedar Funding letterhead, an unexecuted Lender Serv[icing] Agreement, a Lender Purchaser Disclosure Statement, a title report, an appraisal, and copies of John Skordoulis's Loan Application, [the] executed $925,000 Promissory Note and first Deed of Trust, and Cedar Funding, Inc.'s unexecuted Endorsement of Note and unexecuted Assignment of Deed of Trust[;]

"12) On or about September 7, 2006, David Nilsen, as president of Cedar Funding, Inc., executed two assignments of the $925,000 Note and first Deed of Trust in Loan #5197 to the [majority of Respondents]. These Assignments were recorded in the office of the County Recorder for Riverside County on July 11, 2007 . . . . On May 19, 2008, David Nilsen, as president of Cedar Funding, Inc., executed the final assignment to the Cuvas, which was recorded in the office of the County Recorder for Riverside County on September 9, 2008 . . . ;

"[¶] . . . [¶]

"16) On August 15, 2007, Skordoulis executed the documents necessary for an extension of the due dates for Loan #5197 & 5309 with a further advance under the second Deed of Trust in the amount of $800,000 . . . ;

"17) On November 6, 2007, Plaintiff Penny A. Bengert loaned Skordoulis $200,000 . . . on a Promissory Note . . . secured by a 4th Trust Deed against the subject property . . . ;

"18) On February 13, 2008, Plaintiff Maureen A. Chodosh loaned Skordoulis $100,000.00 on a Promissory Note . . . secured by a 3rd Trust Deed against the subject property . . . ;

"19) On May 26, 2008, Cedar Funding, Inc. filed for bankruptcy protection;

"20) On July 28, 2008, W. Raymond Bengert and Plaintiff Penny A. Bengert loaned Skordoulis $100,000.00 on a Promissory Note . . . secured by a 5th Trust Deed against the subject property . . . ;

"21) Loan #5197 went into default on August 1, 2008;

5

"22) None of the Defendants has possession of the original $925,000 Note or has ever seen a signed endorsement of the Note, nor, as of the beginning of trial, know[s] of its whereabouts but present counsel claims to continue to look for it[.]"

After the defendants filed a notice of default and moved forward with a plan to nonjudicially foreclose on the Palm Springs property, Skordoulis filed a complaint to attempt to prevent the foreclosure. Ultimately, the issue at trial came down to whether the defendants had the right to enforce the Note, since none of them was in possession of the Note. Business and Professions Code section 10233.2 permits a licensed real estate broker to maintain possession of a note on behalf of a lender or purchaser if that broker has undertaken to service the loan, such that the lender may still enforce the terms of a note despite not having actual possession of it. The very narrow factual issue in dispute between the parties was whether Nilsen, doing business as Cedar Finding, who *was* a licensed real estate broker, was the party who had undertaken to service the loan, or rather, whether Cedar Funding, Inc., a corporation that Nilsen had formed that *was not* a licensed real estate broker, had serviced the loan. Skordoulis contended that Cedar Funding, Inc., the entity that was not a licensed real estate broker, had undertaken the servicing of his loan, and that under the applicable statute, this fact prevented the defendants from enforcing the Note and foreclosing on the Palm Springs property.

The trial court heard testimony from David A. Nilsen, on behalf of the defendants. Skordoulis offered the testimony of David Judd, a forensic accountant, in support of his contention that it was Cedar Funding, Inc., and not Nilsen, that serviced the loan.

6

Nilsen testified, inter alia, that his business, doing business as Cedar Funding, was "arranging loans between borrowers and lenders, also brokering real estate transactions, also building properties, and selling them."

In 2003, Nilsen made the decision to form Cedar Funding, Inc., an entity separate from Nilsen's "dba" (i.e., Cedar Funding), the business of which was to be a holding company to hold loans that Nilsen, doing business as Cedar Funding, had brokered, in the name of Cedar Funding, Inc. as *lender*. Loans made after the formation of Cedar Funding, Inc., would name the corporation as the loan beneficiary, rather than Nilsen's brokerage business, Cedar Funding. "[O]ne was a licensed real estate broker, the dba, and the other one was a holding company for my loans and deeds of trust between the borrowers and lenders." Cedar Funding, Inc., "operat[ed] as a lender" and owned some real estate, but was not involved in "arranging, negotiating, or selling, or servicing any of the loans . . . ."

The loan to Skordoulis was negotiated, arranged and sold by Nilsen, doing business as Cedar Funding. According to Nilsen, after the loan was funded, Nilsen, doing business as Cedar Funding, serviced the loan on behalf of the defendants.

Nilsen also testified that where the name "Cedar Funding" appears on documents, it is a reference to the "dba," and where "Cedar Funding, Inc." appears, it is a reference to the lender.

Nilsen was not asked during his deposition about the location of the original promissory note. At trial he stated that he recognized a copy of the Note at issue.

7

As a result of Skordoulis's default on the loan, Fidelity National Title Co. recorded a "Notice of Default and Election to Sell under Deed of Trust" in the Riverside County Recorder's office on October 15, 2009. A "Notice of Trustee's Sale," also filed in the Riverside County Recorder's office, indicated that the trustee, SBS Trust Deed Network, planned to sell the Palm Springs property on February 24, 2010. The unpaid balance on the loan as of the date of the "Notice of Trustee's Sale" was $1,247,190.93.

B.     *Procedural background*

Skordoulis filed a complaint against the defendants on December 2, 2009. He alleged claims for fraud and deceit, cancellation of a written instrument, recovery of usury interest, and conspiracy, and sought injunctive relief from the foreclosure.

Approximately a month after filing his complaint, Skordoulis sought a temporary restraining order and requested a preliminary injunction, seeking to prevent Fidelity National Title and SBS Trust Deed Services from completing a nonjudicial foreclosure for the benefit of the individual defendants on the Palm Springs property. Judge Randall D. White denied the application for a temporary restraining order, but set a hearing on Skordoulis's request for a preliminary injunction on a date in March 2010.

Chodosh and Penny Bengert filed a complaint in a separate action on February 18, 2010, seeking declaratory and injunctive relief, and also seeking to enjoin the nonjudicial foreclosure of the Palm Springs property. Chodosh and Bengert sought to enjoin the nonjudicial foreclosure on the ground that if the property were to be sold, they would suffer irreparable injury because the sale would "cause Plaintiffs' subordinate deeds of

8

trust against the property to be valueless." They claimed that a sale would be "wrongful" and should be enjoined because the Note was usurious, the notice of default was defective, and the Note and notice of default were void for other reasons, as well, including that the defendants had breached the terms of the notes and deeds of trust pertaining to the Palm Springs property.[3] Like Skordoulis, Chodosh and Bengert sought a temporary restraining order to prevent the nonjudicial foreclosure from being completed. After full briefing on Chodosh and Bengert's request for a temporary restraining order, Judge Harold W. Hopp granted the request and enjoined a trustee's sale of the Palm Springs property as of February 23, 2010.

Judge White denied Skordoulis's request for a preliminary injunction on March 18.[4] On that date, Skordoulis moved to consolidate the action that he had initiated with the action initiated by Chodosh and Bengert.[5] Skordoulis and Chodosh each sought to have the entire action referred to Judge Hopp; Skordoulis questioned Judge White's

---

[3]    Skordoulis apparently obtained a second loan from Cedar Funding, Inc. and/or the individual defendants, pursuant to a second promissory note and secured by the Palms Springs property through a second deed of trust. There were allegations in Skordoulis's original complaint, as well as in the initial Chodosh/Bengert complaint, that Cedar Funding, Inc. and/or the defendants had failed to fully fund that loan. Ultimately, the issues at trial did not involve this second loan.

[4]    Judge White issued a formal order after hearing on April 16. The text of that order is substantively the same as that of the court's minute order entered on March 18.

[5]    In the meantime, on March 16, Judge Hopp held a hearing on Chodosh and Bengert's request for a preliminary injunction. Upon the conclusion of the hearing, Judge Hopp granted the request for a preliminary injunction. Judge Hopp issued a formal order with respect to the preliminary injunction on April 1.

neutrality in his motion to consolidate, and Chodosh formally moved to disqualify Judge White.[6]

Judge White granted Skordoulis's motion to consolidate, and the consolidated action was assigned to Judge Hopp. As a result of Judge Hopp's order granting the Chodosh/Bengert request for a temporary restraining order, Skordoulis effectively obtained the relief that he had unsuccessfully sought before Judge White.[7]

Skordoulis filed a second amended complaint,[8] and the case proceeded to trial. Certain documents in the record establish that at some point, the individual defendants filed a cross-complaint seeking judicial foreclosure.[9]

---

[6] It is unclear why or how Chodosh had any basis for filing the document titled "Maureen Chod[o]sh's Peremptory Disqualification" in which she challenged Judge White, stating, "Hon. Randall D. White, Judge of the above entitled court, before whom the trial of the aforesaid action or special proceeding is assigned, is prejudiced against me or my interests, so that affiant cannot have a fair or impartial trial or hearing before said Judge." Prior to that point, Judge White had presided over the proceedings related only to the Skordoulis action, not the Chodosh/Bengert action. To the extent that Chodosh's challenge to Judge White was based on his ruling against Skordoulis in Skordoulis's action, this supports our conclusion in part III.B., *post*, that Skordoulis, Chodosh and Bengert's interests in these actions were the same.

[7] Judge White ruled on Skordoulis's request on the merits. There is no indication in the record that Judge White denied relief on the ground that Judge Hopp had granted the same relief in the Chodosh/Bengert action.

[8] The record does not include a copy of Skordoulis's first amended complaint. In the second amended complaint, which is titled "SECOND AMENDED COMPLAINT OF JOHN SKORDOULIS . . . ," Skordoulis asserted causes of action for "Fraud and Deceit"; "Declaratory Relief" seeking a "judicial declaration that the Assignees are not persons entitled to enforce the First Promissory Note . . . by foreclosing their respective interests in the First Deed of Trust"; "Declaratory Relief" seeking "a judicial determination of

Just before trial, the parties informed the court that the plaintiffs, i.e., Skordoulis, Chodosh, and Bengert, intended to seek adjudication of the following claims/issues: (1) that the defendants were not entitled to enforce the Note and Deed of Trust because they did not possess the Note and/or it had not it been indorsed to them; (2) that the Note was usurious and/or the Note and Deed of Trust were void; and (3) that the plaintiffs were entitled to a permanent injunction to prevent the defendants from foreclosing.

The parties filed an "Omnibus Stipulation of Undisputed Facts" on May 9, 2012. Trial began that day before Judge Hopp. After two days of testimony on the factual issue whether Nilsen, doing business as Cedar Funding, had held and serviced the promissory note, or rather, whether Cedar Funding, Inc., was the entity that had done so, and after receiving further briefing from the parties, the court took the matter under submission.

On May 31, 2012, Judge Hopp issued a minute order indicating that the court was ruling in favor of the defendants and against Skordoulis on the "2nd Amended Complaint of John Skordoulis." The minute order stated, "Parties agree all remaining causes of action/complaints are no longer in dispute and shall be dismissed."[10] The court issued a

whether the loan is usurious and as to the principal amount due, if any, on the loan as of the date of trial"; "Cancellation of First Deed of Trust and to Quiet Title"; "Conspiracy"; "Injunctive Relief," seeking to prevent the sale of the property; "Set Aside Transfer From Insolvent Debtor"; and "Unjust Enrichment."

[9]     The cross-complaint is not in the record on appeal.

[10]     The minute order later specifically states "1st Amended Consolidated complaint of CONSOLIDATED CASE INC10001354 dismissed with prejudice," and "Cross Complaint filed 02/08/2012 of GORDON ROBERTSON dismissed with prejudice." The

formal document titled "Ruling on Submitted Matter—Trial" on June 1.  In that document, the trial court set out detailed findings and rulings.  Among the findings that the court made are the following:

> "The Court finds that Mr. Nilsen, doing business as Cedar Funding, not Cedar Funding, Inc., the corporation he controlled, served as the broker and servicer of the note.  Further, the Court finds that, under the terms of California Business and Professions Code [section] 10233.2, delivery of the note to the defendants was complete when Mr. Nilsen, the broker who was servicing the note, received it.  Finally, the Court finds that, based upon the evidence received at trial, the note was lost or misplaced and that defendants may enforce i[t] pursuant to California Commercial Code section 3309."

The court signed the judgment on August 9, 2012.  The judgment sets forth certain of the trial court's findings, including the following:

> "3. The Note was subsequently serviced by David A. Nilsen, a licensed real estate broker.  Several months later, Defendants/Cross-Complainants herein purchased fractionalized interests in the Note.  Thereafter, Nilsen and Defendants/Cross-Complainants each executed an agreement whereby Nilsen would and did continue to service the loan evidenced by the Note and retained the single original of the Note.  Nilsen caused to be recorded three Assignments of the Note and Deed of Trust covering the interests of each of the Defendants/Cross-Complainants herein, each of which [was] recorded in the official records of Riverside County . . . .

> "4. Under the terms of California Business and Professions Code [section] 10233.2, delivery of the note to the defendants was complete when Mr. Nilsen, the broker who was servicing the note, received it.  Based upon the evidence received at trial, the original note was lost or misplaced but Defendants/Cross-Complainants are entitled to enforce it pursuant to California Commercial Code section 3309.

record does not contain either the "1st Amended Consolidated complaint" or the "Cross Complaint."

12

"5. On August 1, 2008, the Note became due and by virtue of the non-payment of Plaintiff John Skordoulis, . . . it went into default."

The court entered judgment in favor of all of the defendants on the combined Skordoulis and Chodosh/Bengert complaints, and in favor of the individual defendants on the "Cross-Complainants' Cross-Complaint."[11] The court awarded the individual defendants the full amount due under the note, including unpaid interest, late charges, and nonjudicial foreclosure costs, totaling $1,534,548.77. The court further granted the individual defendants' request for judicial foreclosure, ordering the sale of the Palm Springs property, and permitting judgment and execution against Skordoulis for any deficiency that remains after the sale of the Palm Springs property.

The individual defendants/cross-complainants filed a motion for attorney fees, seeking fees from Skordoulis, as well as from Chodosh and Bengert. All three parties opposed the motion. In December 2012, the trial court granted the individual defendants/cross-complainants' motion for $130,662 in attorney fees as to Skordoulis, but denied the request as to Chodosh and Bengert.

Skordoulis filed a timely notice of appeal from the judgment, and the individual defendants/cross-complainants filed a timely notice of appeal from the court's order denying an award of attorney fees against Chodosh and Bengert.

---

11    The record does not reveal any reason for the conflict between the apparent dismissal of the cross-complaint in late May 2012, and the court's judgment in favor of the cross-complainants on the cross-complaint in August 2012.

13

III.

DISCUSSION

A.    *Skordoulis's appeal*

Skordoulis contends that the trial court erred in concluding that the defendants have the legal right to enforce the Note.  According to Skordoulis, there is insufficient evidence to support the trial court's factual findings that David A. Nilsen, doing business as Cedar Funding, and not Cedar Funding, Inc., had serviced the loan, that the Note was lost or misplaced, and that the defendants are assignees who are entitled to enforce the Note.

The main factual issue at trial was whether David Nilsen, doing business as Cedar Funding, had held and serviced the loan, or rather, whether Cedar Funding, Inc., was the entity that had serviced the loan.  David Nilsen, doing business as Cedar Funding, was a licensed real estate broker, whereas Cedar Funding, Inc. was not.  As we explain below, the answer to this question was relevant to a determination as to whether the defendants had a legal right to enforce the terms of the Note.

Generally, a " '[p]erson entitled to enforce' an instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." (Com. Code, § 3301.)  It was

14

undisputed that at the time of trial, none of the defendants possessed the Note, none had

seen a signed indorsement of the Note, and none knew the whereabouts of the Note.

Commercial Code section 3309 sets out the circumstances under which a note may

be enforced if the note has been misplaced, lost, or stolen:

> "(a) A person not in possession of an instrument is entitled to
> enforce the instrument if (1) the person was in possession of the
> instrument and entitled to enforce it when loss of possession
> occurred, (2) the loss of possession was not the result of a transfer by
> the person or a lawful seizure, and (3) the person cannot reasonably
> obtain possession of the instrument because the instrument was
> destroyed, its whereabouts cannot be determined, or it is in the
> wrongful possession of an unknown person or a person that cannot
> be found or is not amenable to service of process.
>
> "(b) A person seeking enforcement of an instrument under
> subdivision (a) shall prove the terms of the instrument and the
> person's right to enforce the instrument. If that proof is made,
> Section 3308 applies to the case as if the person seeking enforcement
> had produced the instrument. The court may not enter judgment in
> favor of the person seeking enforcement unless it finds that the
> person required to pay the instrument is adequately protected against
> loss that might occur by reason of a claim by another person to
> enforce the instrument. Adequate protection may be provided by
> any reasonable means."

The trial court had to find that the defendants were "in possession of the

instrument and entitled to enforce it when loss of possession occurred," within the

meaning of Commercial Code section 3309, in order to rule in their favor. On review, we

determine whether there is substantial evidence to support such a finding. It is

undisputed that none of the defendants ever had *actual* possession of the Note at any

point in time. However, Business and Professions Code section 10233.2 allows for a real

15

estate broker to retain possession of a note or collateral loan instruments while permitting the lender, or those having an interest in the note, to have perfected possession of the instrument. Business and Professions Code section 10233.2 provides:

> "For the purposes of Division 3 (commencing with Section 3101) and Division 9 (commencing with Section 9101) of the Commercial Code, when a broker, acting within the meaning of subdivision (d) or (e) of Section 10131 or Section 10131.1, has arranged a loan or sold a promissory note or any interest therein, and thereafter undertakes to service the promissory note on behalf of the lender or purchaser in accordance with Section 10233, *delivery, transfer, and perfection shall be deemed complete* even if the broker retains possession of the note or collateral instruments and documents, provided that the deed of trust or an assignment of the deed of trust or collateral documents in favor of the lender or purchaser is recorded in the office of the county recorder in the county in which the security property is located, and the note is made payable to the lender or is endorsed or assigned to the purchaser." (Italics added.)

Under Business and Professions Code section 10233.2, if the person who retained the note "undertook to service the promissory note" on behalf of the defendants, then the defendants may be said to have "possessed" the note, despite the fact that a broker had actual possession of it at the time it was lost.[12] At trial, the parties disputed whether Nilsen, doing business as Cedar Funding, a licensed real estate broker, had held and serviced the Note, or rather, whether Cedar Funding, Inc., which is not a licensed real estate broker, was the entity that had serviced the Note.

---

[12]    None of the plaintiffs contends that the Note was not assigned to the defendants, or that the assignment was not recorded. (See Bus. & Prof. Code, § 10233.2 ["provided that the deed of trust or an assignment of the deed of trust or collateral documents in favor of the lender or purchaser is recorded in the office of the county recorder in the county in which the security property is located, and the note is made payable to the lender or is endorsed or assigned to the purchaser"].)

16

Skordoulis contends on appeal that the great weight of the evidence demonstrates that the entity that in fact had been servicing the loan in question was Cedar Funding, Inc. He points to evidence in the record that suggests that Cedar Funding, Inc. serviced the Note, including the testimony of his expert, forensic accountant David Judd. However, Skordoulis fails to acknowledge the abundant other evidence in the record that supports the trial court's specific finding that Nilsen, doing business as Cedar Funding, and *not* Cedar Funding, Inc., had serviced the loan.

In reviewing a challenge to the sufficiency of the evidence, we must view all factual matters in favor of the prevailing party and in support of the judgment. "An appellate court ' "must presume that the record contains evidence to support every finding of fact . . . ." ' [Citations.] It is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence. [Citation.] This burden is a 'daunting' one. [Citation.]" (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.) " 'A party who challenges the sufficiency of the evidence to support a particular finding must summarize the evidence on that point, favorable and unfavorable, and show how and why it is insufficient. [Citation.]' [Citation.]" (*Ibid*., italics omitted.) All conflicts in the evidence must be resolved in favor of the judgment. (*Nestle v. Santa Monica* (1972) 6 Cal.3d 920, 925-926.)

We must start from the presumption that the record contains sufficient evidence to support the court's findings of fact. Although Skordoulis refers to a number of items of evidence to support his position that it was Cedar Funding, Inc. that had serviced the

17

loan, he fails to summarize *all* of the evidence presented to the court, both favorable and unfavorable to the judgment, as to which entity and/or individual had serviced the loan. On this basis alone, we could affirm the judgment. (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 749, fn. 1 [when an appellant fails to set forth *all* of the material evidence, a claim of insufficient evidence is waived or forfeited].) However, we will detail just some of the evidence presented at trial that supports the trial court's finding that Nilsen, doing business as Cedar Funding, serviced the loans.

Nilsen testified that he, doing business as Cedar Funding, had serviced the loan. He explained that Cedar Funding, Inc. was the beneficiary of the loan, not the servicer. All of the loan servicing agreements state that Cedar Funding, not Cedar Funding, Inc., was the servicing agent. When directly asked during his deposition, Nilsen testified that Cedar Funding, Inc. had *not* serviced the loan. The trial court was entitled to credit Nilsen's testimony.

In his reply brief, Skordoulis raises for the first time the contention that even if there is substantial evidence to support the trial court's finding that Nilsen, doing business as Cedar Funding, and not Cedar Funding, Inc., serviced the loan for the defendants, at some point Nilsen's broker's license was suspended, and ultimately revoked, such that he was no longer a licensed real estate broker. According to Skordoulis, this means that the exception provided in Business and Professions Code section 10233.2, regarding the servicing of a Note by a licensed broker, would not apply to permit the defendants to enforce the note. Skordoulis maintains that in order to be a person "entitled to enforce,

18

the note must be held and the loan serviced continually by a licensed real estate broker," and that the "exceptions for persons not in possession and lost documents [sic] exist only where a (presently) licensed broker (presently) holds the note."

Not only does Skordoulis raise this complicated and fact-specific issue for the first time in his reply, he also fails to present any authority to support the contention, and offers no argument as to why his interpretation of the statute is reasonable.  Arguments raised for the first time in an appellant's reply brief are deemed forfeited, and we therefore decline to address this issue.  (See, e.g., *Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["[a]rguments presented for the first time in an appellant's reply brief are considered waived"]; *Holmes v. Petrovich Development Co.* (2011) 191 Cal.App.4th 1047, 1064, fn. 2 ["argument is forfeited" where "it is raised for the first time in [appellant's] reply brief without a showing of good cause"]; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 801 [claims raised for first time in reply are forfeited unless good reason has been shown for failure to raise them earlier].)[13]

Finally, Skordoulis also raises for the first time in reply the contention that the trial court's finding that the note had been sufficiently delivered to the final two investors, Robert S. Cuva and Mary V. Cuva, was erroneous because the assignment to them occurred two days after Nilsen's broker's license was suspended.  This is another fact-

---

[13]    By raising this contention for the first time in a reply brief, Skordoulis has prevented the defendants from having the opportunity to address the issue, and prevented this court from having the benefit of briefing from both parties.

intensive issue, and one that does not appear to have been presented to the trial court. We therefore decline to address this issue, as well, on the ground that Skordoulis has forfeited the issue by failing to raise it in his opening brief.

B.      *The individual defendants' cross-appeal*

After obtaining a judgment in their favor, the individual defendants moved for an award of attorney fees against Skordoulis, as well as against Chodosh and Bengert. The trial court granted the request for attorney fees as to Skordoulis, but denied it as to Chodosh and Bengert. On appeal, the individual defendants argue that Chodosh and Bengert engaged in a "collaborative effort" with Skordoulis to obtain a temporary injunction to prevent the nonjudicial foreclosure of the Palm Springs property. Specifically, the individual defendants assert that Chodosh and Bengert sought a restraining order against enforcement of the Note and deed of trust, such that even though they were not signatories to these contracts, they brought claims " 'regarding the enforcement, interpretation or rescission' " of a contract. According to the individual defendants, an attorney fee award may be entered against Chodosh and Bengert despite the fact that they are nonsignatories to the contracts at issue, and is mandatory in this case under Code of Civil Procedure section 1717.

1.    *Additional background*

In their complaint against SBS Trust Deed Network and unnamed Doe defendants, Chodosh and Bengert asserted two "causes of action": (1) declaratory relief, and (2) injunctive relief.[14]

In seeking declaratory relief, Chodosh and Bengert alleged that Skordoulis entered into a written contract with Cedar Funding, Inc. regarding the loan at issue in this case. They further alleged that Fidelity National Title Co. recorded a Notice of Default and election to sell the Palm Springs property in the official records of the County of Riverside.  Chodosh and Bengert asserted that the Note was "usurious," that the Notice of Default was defective, and/or that the Note and Notice of Default were "Void for Other Reasons."  The specific declaratory relief that they sought in their complaint was a declaration: "1. that the Notice of Default is defective and void, and 2. that . . . Article 15, [section] 1 of the California Constitution bars interest or and [sic] charges from being charged or paid on the First Promissory note."  With respect to the injunctive relief sought in the complaint, Chodosh and Bengert sought to prevent the sale of the Palm Springs property through a nonjudicial foreclosure.  Chodosh and Bengert also requested "reasonable attorney fees and costs incurred in this action."

---

14    Both "causes of action" identified in the Chodosh/Bengert complaint are actually claims for relief, not assertions of a primary right. (See *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 526 [" 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other' [citation]"].)

21

In an attempt to ward off the pending trustee's sale, Chodosh and Bengert moved for a temporary restraining order and preliminary injunction. Although a judge had denied Skordoulis's request for a temporary restraining order to prevent the trustee's sale from occurring, the Chodosh/Bengert case was assigned to a different judge, and this judge granted Chodosh and Bengert's request for a temporary restraining order. As a result, the trustee's sale did not take place, and this litigation continued to go forward with respect to the Palm Springs property.

Skordoulis's case was later consolidated with the Chodosh/Bengert case. Ultimately, the entire matter appears to have proceeded to trial on a single cause of action—the second cause of action in the "Second Amended Complaint of John Skordoulis, " which was a request for declaratory relief that "the Assignees . . . are not persons [who are] entitled to enforce the First Promissory Note [¶] . . . by foreclos[ing] their respective . . . interest under the First Deed of Trust.[15]

After trial, the court entered judgment in favor of the defendants and against the "Plaintiffs," stating that "Plaintiffs shall take nothing by their Complaints and judgment is entered thereon in favor of Defendants . . . . Plaintiffs' request for a permanent injunction

_____

[15]    It is unclear why this matter did not proceed on a cause of action in a consolidated complaint, or how Chodosh and Bengert remained plaintiffs, given that the operable complaint appears to be one filed by Skordoulis, individually. In its minute order filed after trial, the court ruled that the consolidated complaint was dismissed, with prejudice. Despite this statement in the minute order, as we explain in the text, the ultimate judgment entered by the court addresses multiple "Complaints" and finds against the "Plaintiffs." The parties raise no issue in this regard. We raise these matters only to provide a clearer picture of the procedural posture of this case in the trial court.

22

against the enforcement of the Note by Defendants is denied. Defendants are the prevailing parties as to the Complaints and are entitled to their reasonable attorney's fees and costs as provided in said promissory note and deed of trust."

The individual defendants then moved for an award of attorney fees from all three plaintiffs in the consolidated case. Chodosh and Bengert opposed the motion for attorney fees, arguing that they "are not parties to any contracts with the Defendant investors or their assignor, Cedar Funding, Inc.," and further asserting that "the claims alleged in [their complaint] are not claims regarding the enforcement, interpretation or rescission of any contract that was at issue here."

During oral argument on the motion for attorney fees, the trial court began by asking counsel for Chodosh and Bengert, "Your clients sued on the note claiming it was not enforceable. There is an attorneys' fees provision. Why should they not have to pay attorney fees?" Counsel responded, "They were not assignees of the party to the note." The trial court continued, "But they are suing on the note. They brought a claim under the note. They even included in their complaint [a] request for attorney fees, and the only basis for attorney fees could be the note, right?" The remainder of the argument centered on whether Chodosh and Bengert, as nonsignatories to either the Note or deed of trust, could be liable for the individual defendants' attorney fees in this action.

At the conclusion of the hearing, the trial court granted the individual defendants' motion for attorney fees as to Skordoulis, awarding them $130,662. However, the court denied the motion as to Chodosh and Bengert. The individual defendants cross-appealed

23

solely on the issue whether Chodosh and Bengert are liable for attorney fees in this action. In response to the individual defendants' opening brief, plaintiff Chodosh filed a response brief, in which Bengert later joined.

2.     *Analysis*

"Generally, the trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion, which should not be disturbed on appeal absent a clear showing of abuse of discretion. [Citations.] But the determination of the legal basis for an attorney fee award is subject to independent review." (*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.)

Unless authorized by either statute or agreement, attorney fees ordinarily are not recoverable as costs. (Code Civ. Proc., § 1021; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 24-27.) Both the Note and the deed of trust securing the Note at issue in this case contain attorney fees provisions, which provide for an award of reasonable attorney fees in favor of the lender/note holder.[16]

---

[16]     The Note provides, "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees."

The deed of trust provides, "If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. . . . [¶] Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon,

Civil Code section 1717 was enacted to establish mutuality of remedy where a contractual provision makes recovery of attorney fees available for only one party (*International Industries v. Olen* (1978) 21 Cal.3d 218, 223), and to prevent oppressive use of one-sided attorney fees provisions (*Coast Bank v. Holmes* (1971) 19 Cal.App.3d 581, 596-597).  That statute provides, in pertinent part:

> "In *any action on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party . . . whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  (Civ. Code, § 1717, italics added.)

As a general rule, attorney fees are awarded under Civil Code section 1717 only when the lawsuit is between signatories to the contract.  (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 379-380 (*Real Property*).)  However, under some circumstances, the Civil Code section 1717 reciprocity principles will be applied in actions involving signatory and nonsignatory parties.  (*Real Property*, *supra*, at p. 380.)

Civil Code section 1717 refers to its application "[i]n any action *on a contract*" (italics added), thereby including *any action where it is alleged that a person is liable on a contract*, whether or not the court ultimately concludes he or she is a party to that contract.  "California courts liberally construe the term ' " 'on a contract' " ' as used within [Civil Code] section 1717.  [Citation.]  As long as the action '*involve*[*s*]' a contract it is

_____

including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust."

25

' "on [the] contract" ' within the meaning of [Civil Code] section 1717." (*Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 455; see *Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 841; *Care Constr., Inc. v. Century Convalescent Centers, Inc*. (1976) 54 Cal.App.3d 701, 706 ["as long as the action here involved a contract it was 'on a contract' and within Civil Code section 1717"].)

In *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124 (*Reynolds Metals*), the Supreme Court concluded that nonsignatory defendants, who were sued on a contract as if they were parties to it, were entitled to attorney fees upon prevailing in the action pursuant to Civil Code section 1717: "Its purposes require [Civil Code] section 1717 be interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds Metals*, *supra*, at p. 128.)

*Reynolds Metals* cited with approval the opinion in *Babcock v. Omansky* (1973) 31 Cal.App.3d 625 (*Babcock*), in which a defendant prevailed against an allegation that she was liable as a coventurer or partner with another defendant who had executed a promissory note that provided for attorney fees. Concluding that the nonsignatory defendant was entitled to attorney fees under Civil Code section 1717, the *Babcock* court reasoned that the language of that provision was sufficiently broad to include persons who had not signed the contract, but were sued on the note and found not to be parties to it. (*Babcock*, *supra*, at pp. 633-634.)

26

Although *Reynolds Metals* and *Babcock* involved signatory plaintiffs suing nonsignatory defendants, a corollary rule has evolved for the reverse situation. "Regarding nonsignatories to a contract with an attorney fees provision, the courts have developed the following rule: 'Where a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed.' " (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 967 (*Cargill*), quoting *Real Property, supra,* 25 Cal.App.4th at p. 382.)

Thus, if Chodosh and Bengert would have been entitled to attorney fees if they had prevailed on their complaint, the individual defendants are entitled to their attorney fees as the prevailing parties.[17] At least "[t]wo situations may entitle a nonsignatory party to attorney fees." (*Cargill, supra*, 201 Cal.App.4th at p. 966.) "First is where the nonsignatory party 'stands in the shoes of a party to the contract.' [Citation.] Second is where the nonsignatory party is a third party beneficiary of the contract." (*Ibid*.)

Chodosh and Bengert's claims against the individual defendants were not their individual claims. Rather, they were Skordoulis's claims, brought by Chodosh and Bengert, as junior lienholders. In fact, the very absence of a contract between Chodosh

_____

[17] Although Chodosh and Bengert's original complaint did not name the individual defendants, it did assert claims against multiple Doe defendants, and identified the trustee as the named defendant. As the litigation progressed, it became apparent that the claims of all of the plaintiffs were in fact against the senior lienholders, i.e., the individual defendants, who were the real parties in interest, as the owners of the Note, and those asserting the power to foreclosure pursuant to the deed of trust in order to enforce the Note.

and Bengert and the individual defendants demonstrates that Chodosh and Bengert had no independent standing to challenge the Notice of Default, or the terms of the Note, yet this is precisely what they attempted to do in filing their complaint. Chodosh and Bengert have not presented any authority, and this court has found none, that would permit a junior lienholder to *prevent* a nonjudicial foreclosure by a senior lienholder.[18]

---

[18] When a debtor (such as Skordoulis) defaults on a secured real property loan, the lender beneficiary, like the defendants in this case, may institute nonjudicial foreclosure proceedings to trigger a trustee's sale of the realty to satisfy the obligation. (Civ. Code, § 2924 et seq.) The beneficiary, like any other party, may bid cash, offering more or less than the balance due on the debt. (See, e.g., *Pacific Inland Bank v. Ainsworth* (1995) 41 Cal.App.4th 277, 280.) In such an instance, a junior lien (or liens) will be extinguished at the foreclosure sale unless the successful bidder purchases at a price sufficiently high to pay off both the senior lien and the junior lien(s). (*FPCI RE-HAB 01 v. E&G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1023.)

"California's nonjudicial foreclosure scheme is set forth in [the Civil Code] . . . , which 'provide[s] a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154.) " 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' " (*Ibid.*) " 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' " (*Ibid.*)

It is generally understood that an individual who invests in a "second [(or third or fourth)] deed of trust accepts all the risks of the junior position." (*Friery v. Sutter Buttes Sav. Bank* (1998) 61 Cal.App.4th 869, 878.) He or she "*gambles* that the equity in the property will be sufficient to cover [the] investment in a worst case scenario—a foreclosure sale." (*Ibid.*, italics added.)

However, there are some other possible remedies that a junior lienholder may pursue to protect his or her interests. He or she may redeem from a senior judicial sale (Code Civ. Proc., § 701), or may obtain a deficiency judgment after a judicial sale. (*Savings Bank of San Diego County v. Central Market Co.* (1898) 122 Cal. 28; *Giandeini v. Ramirez* (1936) 11 Cal.App.2d 469; see *Brown v. Jensen* (1953) 41 Cal.2d 193, 196.) After a senior private sale, the junior lienholder has no right to redeem; however, he or

28

Nevertheless, when Skordoulis was unable to obtain a temporary restraining order to prevent the pending trustee's sale, Chodosh and Bengert filed their action and were granted the temporary relief that Skordoulis had been denied. They continued to participate in the action, apparently pursuing their claims that the Notice of Default was defective and void, and that the Note charged unlawful usurious interest and therefore could not be fully enforced, in an attempt to protect their interests in their own notes that were secured by the Palm Springs property, albeit in junior positions. They also continued to prevent the nonjudicial foreclosure.

Chodosh and Bengert were, essentially, "standing in the shoes" of Skordoulis when they brought *this particular action* against the senior lienholders. In doing so, Chodosh and Bengert created an action that was one "on a contract" (i.e., the Note and/or deed of trust) as that phrase has been interpreted for purposes of Code of Civil Procedure section 1717. In stepping into Skordoulis's shoes, obtaining the temporary relief that he

she may seek a money judgment for the full amount due on the underlying junior debt obligation when the senior lienholder conducts a nonjudicial foreclosure that extinguishes the junior lienholder's security interest. (*Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 43–44.)

Again, we have found no authority that establishes the right of a junior lienholder to prevent a nonjudicial foreclosure sale. Rather, it would appear that such a sale is to go forward; "when there is a claim of irregularities in a foreclosure sale, the remedy is to move to set aside the sale. (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:154, pp. 505-506.)" (*South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc*. (1999) 72 Cal.App.4th 1111, 1121.) An action to set aside the sale "is not the exclusive remedy," as "[f]raudulent actions taken by the beneficiary can [also] give rise to liability in tort." (Ibid.) " 'When the property has been sold to a bona fide purchaser, even though the sale cannot be avoided, the trustor or a junior lienor . . . retains the right to recover damages from the trustee and the beneficiary of the foreclosing lien if there have been material irregularities in the conduct of the foreclosure.' " (*Ibid*.)

29

had unsuccessfully sought, and in attempting to obtain further relief to which it was far from clear that they would have been entitled, Chodosh and Bengert were suing *as if they were parties to a contract that contained an attorney fee provision*.  In filing suit and challenging the validity of the Note and corresponding deed of trust and preventing the nonjudicial foreclosure from going forward, Chodosh and Bengert effectively caused the entire litigation to continue.  By stepping into the shoes of a party to the Note and corresponding deed of trust and challenging the validity and enforceability of those documents, Chodosh and Bengert would have been entitled to attorney fees from the individual defendants under the reciprocal provision of Code of Civil Procedure section 1717 if they had prevailed.  Therefore, they must bear the burden of an award of attorney fees, since they did not ultimately prevail in this action.

We conclude that the trial court erred in not awarding the individual defendants attorney fees against Chodosh and Bengert.  That portion of the trial court's postjudgment order denying the motion for an award of attorney fees against Chodosh and Bengert is reversed.

IV.

DISPOSITION

The judgment is affirmed.  The postjudgment order regarding attorney fees is reversed to the extent that the order denies the individual defendants' motion for attorney fees from Chodosh and Bengert.  The matter is remanded to the trial court to conduct

30

further proceedings as necessary, consistent with this opinion, with respect to the individual defendants' request for attorney fees from Chodosh and Bengert.  Upon the conclusion of these proceedings, the court shall incorporate its ruling on the attorney fee matter into an amended judgment.  Plaintiffs Skordoulis, Chodosh, and Bengert shall bear costs on appeal.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.